*New-Haven,*
July, 1846.

The State
*v.*
Potter.

# THE STATE *against* POTTER.

While the jury were being empanelled for the trial of an indictment for murder, *A* was called as a talesman, and being enquired of, whether he had formed any opinion as to the prisoner's guilt, said, that soon after the prisoner's arrest, he read certain newspaper accounts of what purported to be his confessions ; and upon reading them, he was of opinion, that if those accounts were true, a horrid murder had been committed ; but he had formed no opinion as to the truth or falsity of them ; and remarked to his family, while reading the accounts, that the case, on the trial, would probably turn out to be a very different affair : he added, that he had not any settled opinion upon the subject, and felt that he could render an impartial verdict. Held, that *A* was not disqualified by bias, to sit as a juror in the cause.

*B* having been called as a talesman, in the same cause, and examined as to his bias, and no reason to except to him on that account appearing, the counsel for the prisoner were informed by the court, that they could then challenge *B* peremptorily, if they desired to do so. They declined to exercise the right, a that time, as the panel was not then full ; and *B* was directed to take his seat as one of the jurors. After the panel was full, and but six peremptory challenges had been made, the prisoner's counsel claimed the right to challenge *B* peremptorily. Held, that in the absence of any reason for a peremptory challenge then, which did not exist before, when the exercise of the right was declined, it was too late to challenge *B* peremptorily.

Where the confession of a prisoner is offered in evidence in connexion with some inducement held out to him to make it, if the confession is not so connected with the inducement as to be *a consequence* of it, it is to be considered as voluntary, and of course, admissible.

Therefore, where the uncle of the prisoner said to him, on the 10th of *February*, while he was in gaol, " This is a sorrowful thing : the people don't think you are guilty, but that you know something about it, and if so, you had better tell all you know ;" to which the prisoner replied, that he knew nothing about it. His uncle then said, " I think you do know something about it ; the circumstances are very much against you." On the two succeeding days, he said that other persons were associated with him in the commission of the crime. On the 17th of *February*, the prisoner said to a witness, who had come to his cell, at his request, that he was in such distress of mind, that he could no longer eat, drink or sleep, or get rest of any kind ; that he could no longer be guilty of accusing innocent blood ; that he alone was guilty of the murder in question ; and wished the witness to go and call the counsel for the prosecution. They came to the prisoner's cell accordingly, and one of them inquired of him, if he had sent for him ; to which the prisoner replied, that he had, and wished to say to him, that he alone was guilty of the murder. On being asked, why he had accused others of a participation in the crime, he replied, that he had hoped, by accusing others, he might escape the extreme penalty of the law. On being inquired of, if any one had held out to him any such inducement, he replied that no one had, but still he had a hope. He then proceeded to detail the particulars of the murder. Held, that the inducement held out to him, by his uncle, on the 10th, had no efficiency in producing the confessions made on the 17th, and consequently, they were voluntary and admissible.

New-Haven,
July, 1846.

The State
v.
Potter.

THIS was an indictment for the murder of *Lucius P. Osborne;* tried at *New-Haven, October* term, 1845, before *Williams,* Ch. J. and *Waite,* J.

While the jury were being empanelled, *Joel Augur* was called, by the sheriff, as a talesman ; and being enquired of, by the counsel for the prisoner, whether he had formed any opinion as to the prisoner's guilt, he said, that soon after the prisoner's arrest, he read certain newspaper accounts in relation to the supposed murder ; and among them were what purported to be the confessions of the prisoner. Upon hearing these read, he was of opinion, that if those accounts were true, a horrid murder had been committed ; but neither at that time, nor at any other, had he formed any opinion as to the truth or falsity of those reports ; and he remarked to his family, while reading the accounts, that the case, on the trial, would probably turn out to be a very different affair : that he had not, when he was inquired of, any settled opinion upon the subject, and felt that he could render an impartial verdict. The counsel for the prisoner thereupon objected to his being sworn as a juror, upon the ground of bias against the prisoner ; but the court over-ruled the objection ; and there being no peremptory challenge against him, he was sworn as a juror in the cause.

*Joshua Barnes* was then called, by the sheriff, as a talesman. The counsel for the prisoner, having examined him as to his bias in the cause, and no sufficient objection appearing against him, were informed, that they could then challenge him peremptorily, if they desired to do so. They declined to exercise the right of peremptory challenge at that time, as the panel was not then full ; and the court thereupon directed *Barnes* to take his seat as one of the jurors, which he did accordingly.

*William Dickerman* being also called, by the sheriff, as a talesman, and the counsel for the prisoner having examined him as to his bias, and there appearing no reason to except to him, on that account, they were informed by the court, that they could then challenge him peremptorily, if they desired. This they declined to do, at that time, as the panel was not then full ; and *Dickerman* was directed to take his seat as one of the jurors.

After the panel was full, and but six peremptory challenges

had been made, the prisoner's counsel claimed the right to challenge *Dickerman* peremptorily ; whereupon they were inquired of, by the court, whether any reason for a peremptory challenge then existed, which did not exist, when they before declined to exercise the right ? They answered in the negative ; and the court thereupon decided, that it was too late to challenge *Dickerman* peremptorily.

On the trial of the cause to the jury, on the plea of *not guilty*, the attorney for the state offered *Charles Ball* as a witness, to prove certain confessions of the prisoner, made to *John C. Hollister* and *Eleazer Foster*, the grand-jurors who prosecuted the complaint against the prisoner before the justice. *Ball* testified, (under exceptions by the prisoner's counsel,) that on the 17th of *February*, 1845, while he was at tea, being informed by the assistant gaol-keeper, that the prisoner wished to see him, he went to the prisoner's cell, and the prisoner said to the witness, that he was in such distress of mind that he could no longer eat, drink or sleep, nor get any rest of any kind ;—that he could no longer be guilty of accusing innocent blood ; that he alone was guilty of the murder of *Osborne*, and wished the witness to go and call Messrs. *Foster* and *Hollister ;* which the witness did, in pursuance of the request of the prisoner ; that *Foster*, *Hollister* and the witness then went to the prisoner's cell, and *Foster* inquired of the prisoner, if he had sent for him ; that the prisoner replied, that he had, and wished to say to him, that he alone was guilty of the murder of *Osborne ;* that *Foster* asked him, why he had accused others of a participation in the crime ; that the prisoner replied, that he had hoped that, by accusing others, he might escape the extreme penalty of the law ; that *Foster* then enquired, if any one had held out any such inducement ? that he replied that no one had, but that still he had a hope ; that *Foster* then asked him, how the murder was committed ; and that he proceeded to detail the particulars.

On the cross-examination of the witness, by the counsel for the prisoner, he was inquired of by them, whether the prisoner had not previously made other confessions ? *Ball* thereupon testified, that the prisoner, on the 11th of *February*, 1845, had confessed to *Jesse Knevals*, that he, the prisoner, had hired one *Austin McGuire*, a negro, for five dollars, to commit the murder ; that he was present when *McGuire* did

New-Haven,
July, 1846.

The State
v.
Potter.

the act; and that afterwards, on the 12th of *February*, he made another confession to the witness, in which he stated, that the negro was not guilty, but that two young men by the names of *Beecher* and *Sage*, were associated with him in the murder. The prisoner's counsel then introduced, as a witness, *Timothy Potter*, the uncle of the prisoner, who testified, that on the 10th of *February*, after the prisoner's arrest, he accompanied him to the gaol, and that he there had a conversation with him to the following effect. The witness said to the prisoner, *Andrew*, this is a sorrowful thing. The people don't think you are guilty, but that you know something about it; and if so, you had better tell all you know. To this, the prisoner replied, that he knew nothing about it. The witness then said, I think you do know something about it; the circumstances are very much against you; and the sooner you confess, the better it will be for you.

There was no evidence that the prisoner, on the 10th of *February*, or at any time thereafter, had been informed, that his confessions would be used as evidence against him; or that he had been in any manner cautioned in regard to them. The counsel for the prisoner thereupon claimed, that the testimony in regard to the confession made to *Foster* and *Hollister*, on the 17th of *February*, should be rejected, and not suffered to go to the jury; because it was induced, by the advice of *Timothy Potter* so given, and because the confession was made to a prosecuting officer in the cause, without any caution given to the prisoner, that his confession would be used in evidence against him. The court over-ruled the objection, and suffered the testimony to go to the jury, as part of the evidence in the cause.

The jury found the prisoner *guilty;* and he thereupon moved for a new trial, on the ground that the above-mentioned decisions of the court were erroneous.

*Chapman*, in support of the motion, contended, 1. That *Augur* was improperly sworn as a juror. In the first place, he had read the confessions of the prisoner in the newspapers, and had upon them formed and expressed an opinion that a horrid murder had been committed. *The United States* v. *Wilson, Bald.* 78. *The State* v. *Godfrey, Brayt.* 170. Ex-parte *Vermilyea*, 6 *Cowen* 555. Secondly, the supposition of

the juror, that he could render an impartial verdict, did not qualify him to try the cause. *The Commonwealth* v. *Knapp,* 9 *Pick.* 496.

2. That the peremptory challenge of *Dickerman*, made by the prisoner, was improperly disallowed. In the first place, the statute gives to the prisoner, in a capital trial, an unqalified right to challenge twenty of the jurors summoned and empanelled. *Stat.* 176. *tit.* 20. *s.* 137. (ed. 1838.) Secondly, a prisoner may reserve his peremptory challenges until he has exhausted his challenges for cause. *Hooker* v. *The State,* 4 *Ohio R.* 348.

3. That the court erred in admitting the confession made by the prisoner, on the 17th of *February*. *Warickshall's* case, 1 *Leach's Cr. Ca.* 299. (248. *Dub.* ed.) 1 *Greenl. Ev.* 254. & seq. *ss.* 219, 220. *Rex* v. *Hannah Kingston*, 4 *Car. & Pa.* 387. (10 *E. C. L.* 434.) *The Commonwealth* v. *Knapp*, 9 *Pick.* 496. 508.

*R. I. Ingersoll* and *Kimberly*, contra.

WILLIAMS, Ch. J. This is a motion for a new trial, in a capital case, upon the ground that the defendant has been deprived of his legal rights in respect to those who were to constitute the jury ; and that his confessions have been improperly admitted.

The former objection is founded upon the admission of a juror, who, he claims, ought not to have been allowed to sit, on account of previous opinions; and that he was not allowed a peremptory challenge, at the time he chose to take it.

As to the former, the juror had read newspaper accounts in relation to the supposed murder, purporting to be the confession of the prisoner, that he, and he alone, had committed the murder, and stating the manner ; and upon reading them, he was of opinion, that if they were true, a horrid murder had been committed; but he had formed no opinion as to their truth, and remarked, while reading them, that on the trial, the case would probably turn out to be a very different affair. When called upon, he declared, that he had no settled opinion upon the subject, and felt that he could render an impartial verdict. The court held, that he was an indifferent juror; and we are called upon to review that opinion.

*New-Haven,*
July, 1846.

The State
*v.*
Potter.

All agree in the value of trial by jury, in criminal cases, especially in cases where life is at stake; and all will agree, that this jury should be indifferent and impartial; that they should be men whose minds are open to impressions which the facts and law in the case ought to make, so that there should be no combat with preconceived opinions in regard to the case.

By this, however, we do not understand, that where the facts are such as to leave no doubt as to the nature of the crime, if committed, an opinion that such acts, if done, constituted that crime, would disqualify a juror. That would be to say, that those were the most fit jurors, who did not distinguish the nature of actions. For instance, a house is broken open in the night season, and plundered; the thief is for a time unknown; when taken and brought to trial, it could not render a juror, a biased juror, that he had said and believed, that a burglary had been committed in that house, if those facts were true. Partiality is by law presumed from nearness of kindred; from being in the power of the party, as if counsel, or servant, or tenant; from having been an arbitrator; from having declared an opinion, or having given a verdict in a former trial, or having been on a divided jury. Such facts carry with them *prima facie* evident marks of suspicion either of malice or favour, and the court is bound to set such a juror aside. Challenges to the favour are when there are only probable circumstances of suspicion. 3 *Bla. Com.* 363.

These are, by the common law, to be judged by triers designated by the court; and it is to be left to the conscience and discretion of those triers, upon hearing the evidence, whether the juror be indifferent or not. The challenge, therefore, for a principal cause, is a conclusion of law; to the favour, is a matter of fact for the triers.

By our practice, however, the court decide in both cases; and therefore, where they have come to an incorrect conclusion, especially in a case of this nature, it may be a subject of review. Where the fact is ascertained by triers,—the opinion of the court as to what is proper evidence to go to the jury, may be reviewed, as in other cases—such as *Polly Bodine's* case, 1 *Denio* 281. In that case, the court decided, rather what evidence should be admitted, than what weight should be given to it. In this case, the juror had expressed no

opinion whatever, except that the facts would probably turn out very differently from the newspaper account; which certainly creates no suspicion of bias; but on the contrary, shows a mind prepared to hear, and expecting to hear, further, before forming an opinion. If therefore, the law is as has been held by great authorities, that an opinion must not only have been formed, but expressed, to disqualify the juror, this case would not be within it. *Callender's* case, 1 *Burr's Trial* 418. *Boardman* v. *Wood*, 3 *Verm.* 570. Other authorities there are, which hold, that the having formed an opinion upon the case, is a sufficient objection. *The United States* v. *Wilson, Bald.* 78. *The State* v. *Godfrey, Brayt.* 170. *Blake* v. *Millspaugh,* 1 *Johns. R.* 316. Ex parte *Vermilyea,* 6 *Cowen* 555. 564. *The People* v. *Vermilyea,* 7 *Cowen* 108. *The Commonwealth* v. *Knapp,* 9 *Pick.* 496. 499. *The People* v. *Mather,* 4 *Wend.* 230. 1 *Sw. Dig.* 737. And we certainly are not prepared to say, that an opinion formed upon the case, or an essential part of the case, such as it would require evidence to remove, would not disqualify a juror.

But we do not find it necessary to discuss or to settle that question, because we do not find any opinion, either formed or expressed, which shows a want of indifference in the juror. It is perfectly evident, that he had no opinion upon the case itself; but he did think, if the facts were as stated in the prisoner's confession, a horrid murder had been committed. This is a mere hypothetical opinion, as in *Durell* v. *Mosher,* 8 *Johns. R.* 445. The question, it is to be borne in mind, is a question of indifference in the juror. In looking at that point, we are to see whether the juror has formed any opinion, which shows he is not indifferent in this case. The juror having declared an opinion before-hand, that the party is guilty, or will be hanged, or the like, is a ground of challenge. 3 *Bac. Abr.* 756. *tit.* Juries. E. 5. (*Gwil.* ed.) Yet it hath been adjudged, that if such declaration was made from his knowledge of the case, and not out of any ill will to the party, it is no cause of challenge. 2 *Hawk. P. C. ch.* 43. *sect.* 28. The opinion expressed, therefore, must be such as indicates hostility, or a want of indifference, in the juror. Ld. Ch. J. *Abbott,* in a recent case, speaking of such opinions, says: " It does not appear distinctly, in what precise form the question was propounded; but in order to make the answer available for any

purpose, *if it could have been received, it must have been cal-* culated to show an expression of hostility to the defendants, or some of them,—a preconceived opinion of their personal guilt, or a determination to find them guilty ; any thing short of this would have been irrelevant." *The King* v. *Edmonds,* 4 *B. & Ald.* 471. (6 *E. C. L.* 492. 502.) And upon a review of the ancient authorities, the Chief Justice said, that " expressions used by a juryman are not cause of challenge, unless they are to be referred to something of ill will towards the party challenging." 6 *E. C. L.* 503. Then it must follow, that an opinion upon a matter of law merely, could not be a cause of challenge, unless it was so gross as to be evidence of partiality. The same learned judge also says, " a knowledge of certain facts, and an opinion that these facts constitute a crime, are certainly no ground of challenge ; for it is clearly settled, that a juryman cannot be challenged, by reason of his having pronounced a verdict of guilty against another person charged in the same indictment." 6 *E. C. L.* 502. And it has been decided in our own courts, that an opinion on a general principle of law, will not disqualify a juror. *Pettis* v. *Warren, Kirby* 427. In the case before us, the juryman gave no opinion upon the facts as stated, but supposed they would, on the trial, turn out very differently from the newspaper accounts ; but he did say, if they were true, a horrid murder had been committed. And is there a man in this community, who could have come to a different result upon these facts ? Is it any evidence of hostility or prejudice against the prisoner to believe and declare, that if he killed a friend without provocation, for his money or his watch, it was a horrid murder ? How does this claim comport with the doctrine of Ch. J. *Abbott,* that an opinion that certain facts constitute a crime, *is no ground of challenge ?* Reverse the case, and suppose that the prisoner had stated in the newspapers, that he was attacked by the deceased, with a deadly weapon, and that he, to prevent the blow, knocked the assailant down with a cane he had in his hand ; and the juryman having read that, formed his opinion that he was justified, if his statement was true ; would he not be an indifferent juror ? Does it show ill-will to the public or favour to the prisoner ?

As causes of this kind must depend much on their own circumstances, it is not to be expected, that we shall find

*New-Haven,*
July, 1846.

The State
*v.*
Potter

cases exactly similar; but some have been decided in our sister states, where stronger objections have been overruled—as an opinion formed and expressed, founded on common report, when the juror believes it would not affect his verdict, should the evidence be different. *The State* v. *Williams,* 3 *Stewart* 454. So where a juror admitted he had expressed an opinion on the circumstances, as he had heard them narrated in the country, but had not heard any of the evidence on the examination of the prisoner, or conversed with the witnesses or parties, and did not think the opinion so formed would influence his mind in trying the cause, he was held indifferent. *Brown's* case, 2 *Leigh* 769. So in another case, where the jury had heard the relation of the principal, and said, if these things are true, he believed the prisoners guilty, but declared he felt no prejudice, and, if the facts did not turn out so, he was ready to change his opinion, he was allowed to sit. *Sprouce* v. *Commonwealth,* 2 *Vir. Cas.* 375. We allude to these cases, rather to show how far courts have gone, than as precedents.

The case of one of the jurors on *Burr's* trial so much resembles this, that it is worthy of particular notice. *Hamilton Morrison* admitted, that he had frequently thought and declared, that Col. *Burr* was guilty, if the statements he heard were true; that he did not know whether they were so, but only thought from the great clamor which had been made, that it might be possible they were true; that he had not expressed any positive opinion, nor was he certain that he had always qualified it, by saying "if these things are true;" that he did not recollect having said, that Col. *Burr* ought to be hung, without stating, at the same time, "if he were guilty." The case was suspended, and on the next day, another examination was had, in which nothing material transpired, unless his declaration in answer to Col. *Burr's* question, that he had no prejudice for or against him; when he was admitted as a proper juror. 1 *Burr's Trial,* 371. 383. "Light impressions," says the great Judge who presided on that trial, "which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror." 1 *Burr's T.* 410. Where a juror has a settled opinion in the case, and has declared it, he ought not to sit. But

where it is a mere impression, arising from facts supposed to *New-Haven*, July, 1846.
exist, of the truth of which he has formed no opinion, or
where the opinion is upon a point so free from doubt, as to lay The State *v.* Potter.
no foundation for a dispute, there can be no ground to infer
hostility or prejudice, and so the juror must be considered in-
different.    To exclude persons on such grounds would be to
adopt a rule not known to the common law ; and, in cases of
great notoriety, would be to say, that there should be no trial
at all by jury, or that the trial should be by persons the
least fitted by their situation and intelligence to do justice to
the cause they were called to determine.    We are clearly of
opinion, that this juror was competent to sit on this trial.

2  Again, it is said, the prisoner has been deprived of a
right to a peremptory challenge, which he was entitled to.

It is not denied, that time and opportunity were given to the
prisoner to challenge a juror ; but it is claimed, that he had
not all the time the law allows him.    *Dickerman*, a talesman,
had been examined, and there was no cause of challenge
known against him.    The court then told the counsel, if they
intended a peremptory challenge, they must make it, at that
time.    They had then a reasonable opportunity to make their
challenge ; but they claim they may make it at their own time,
provided it is done before the jurors are sworn.    The statute,
it is said, gives them power to challenge peremptorily twenty
jurors summoned and empanelled,—and much criticism has
been had upon the word "empanelled."    It is claimed, that it
means the jury sworn to try the cause ; and that until sworn,
they are not empanelled.

That they form a jury, when thus empanelled, is true ; but
that they are not empanelled until sworn, is not true.    On the
other hand, we learn from high authority, that a jury are said
to be empanelled, when the sheriff has entered their names
into the panel—a little piece of parchment.    *Co. Litt.* 158. *b.*

The statute of 3 *Geo.* II. says, a sheriff shall not return a
separate panel for every separate cause,—but one and the
same panel for every cause. 3 *Bla. C.* 358. And we can
hardly open a book upon the subject but it speaks of the
panel returned by the sheriff. 4 *M. & Sel.* 467.

A prisoner has, by statute, a right to a copy of the panel,
in certain cases, before the time of trial.    3 *Bac. Ab.* 742. *tit.*
Juries. B. 8. (*Gwil.* ed.)  If it applied only to jurors sworn,

then it would imply that jurors might be challenged after they were sworn, which is not claimed.

But it is said, the clerk informs the prisoner, that if he would challenge them, or any of them, before they are sworn, he shall be heard. This certainly is the form. We understand it to mean, that his challenges must be made before the jurors are sworn; but we do not suppose, that the prisoner is therefore to direct at what time before they are sworn this shall be done. He is called upon then to make his challenges; and when he has had a fair opportunity to do this, he has had the privilege the statute confers upon him.

He has a right to plead, to examine witnesses, to be heard by counsel; but the court direct the time when he shall plead, when his witnesses shall be heard, and the order in which his counsel shall speak. The prisoner may think it would be better for him that his counsel should have the closing argument, particularly in cases where he assumes the burden of proof, as in cases of insanity; and we see not why he may not as well claim to exercise his rights in his own time, in that case, as in this. The order of time and manner of proceeding on all such subjects must of course be under the direction of the court, unless the statute prescribes otherwise. To make the statute what it is claimed it should read, the accused may challenge peremptorily twenty jurors returned and empanelled, at any time before they are sworn.

But it is said, that by the *English* practice, the party has a right to challenge until the juror is sworn. There, each juror is sworn, as soon as he has been examined and opportunity given for challenges. By our practice, the jurors are none of them sworn until all have been examined, and opportunity offered for challenge. Here, when one has been examined and opportunity to challenge given, he is directed to take his seat as a juror, just as in *England* after he has been sworn; and the delay in swearing him, is not to give any privilege to the prisoner, which he could not claim elsewhere, but to prevent multiplying oaths, and to save the delay incident to the administration of the oath twelve times, instead of once. The prisoner now claims, as matter of right to himself, a privilege which he could have no pretence to claim after the person challenged had been declared a juror, by the *English* practice;—and if the principle claimed here, by the prisoner,

is correct, that he must be allowed this privilege to the last moment before the trial commences, the practice is wrong then, which deprives him of this privilege, by swearing each juror before he has had full opportunity to make his challenge.

The effect of the practice, in both cases, is the same. In the one case, his opportunity is closed when the juror is sworn; in the other case, when he is directed to take his seat.

Our practice gives one advantage to the prisoner, that if any thing new has occurred, since the juror was directed to take his seat as juror, the party will not be absolutely precluded from taking the benefit of it, as he is in *England* after he is sworn, unless by consent. *Tyndal's* case, *Cro. Car.* 291, 2. And for that reason, the court, (when a motion was made to challenge the juror soon after the notice given,) enquired of the counsel, whether any thing had occurred since the notice given by the court which called for the exercise of this right, to which it was answered, there had not; by which it appears, that the sole question is, whether the court or the prisoner shall direct as to the time of challenge, before the jury are sworn. For if the prisoner has this right, it must be conceded, that the reason which prompts him to the exercise of it, is not to be enquired into.

If, on the other hand, he has not the right, then it is apparent, that the court, out of humanity to the prisoner, were disposed to listen to any reason which called for a dispensation of the rule they had established, as they were not precluded entirely, by administering the oath, as would have been the case in *England*. As no such cause existed, they saw no reason to rescind the rule they had made, conformable to our practice, of which they had given notice, merely that the party should not claim to be surprised thereby.

It being a case in which life was concerned, the court were willing to find cause to relieve against the operation of a good rule, if it was like to prejudice the party; but they did not intend thereby to weaken its effect, by yielding it upon a claim of right. And no case has been brought in support of this claim, except one from *Ohio*. *Hooker* v. *State of Ohio*, 4 *Ohio R.* 348. Upon looking at that case, we find that the court below had decided, that they would allow no challenge for cause, until the prisoner had made all his peremptory challenges. This judgment was very properly reversed, by the

*New-Haven,*
*July, 1846.*

The State
*v.*
Potter.

superior court, conformably to our constant practice, as well as to well settled principles.

In giving their reasons, the court remark, that this right of peremptory challenge should be kept open to the latest possible period, to wit, up to the actual swearing of the jury : in other words, that in this respect, they follow the *English* practice, which we have shown is substantially followed here.

3. The next question is, whether the evidence of the confessions of the prisoner was properly admitted.

The time was, and perhaps in some places still may be, when confessions of guilt were extorted, by the dungeon and the rack.   But by the law under which we live, a confession produced by the impressions of hope or the torture of fear, is not admissible in evidence.  1 *McNally's Evid.* 42.   While, on the other hand, a free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the highest sense of guilt.  *Leach's C. L.* 248. 1 *Greenl. Ev.* 254.

The enquiry, therefore, is addressed to the discretion of the court, whether considering the age, situation and character of the prisoner, and the circumstances under which the disclosure was made, it was voluntary or not ; and where so much depends upon the discretion of the judge, it is difficult to lay down precise rules.

Some points, however, are settled.   One is, that when the disclosure is the result of inducements held out by a public officer, or those connected with the prosecution, such confessions are not to be admitted as evidence, though they come from an officer not authorized to hold out inducements.   Yet the fact that he is connected with those who may have authority, and has public duties to perform, is calculated to have an effect on the mind of a person under the frown of the law ; as when made to a constable, or even the wife of a constable, who told the prisoner he had better confess.   *Rex* v. *Gibbons,* 1 *Car. & Pa.* 97. (11 *E. C. L.* 327. 328. n. *a.*)   So, too, some of the *English* judges have held, that confessions made to third persons,—persons not in office or connected with the prosecution—under the inducement held out, that it would be better for them, if they did confess, or worse if they did not, could not be admitted at all in evidence.   *Rex* v. *Dunn,* 4 *Car. & Pa.* 543. *Rex* v. *Slaughter, Ib.* n. *b.* (19 *E. C. L.* 518.)

*Rex* v. *Hannah Kingston*, 4 *Car. & Pa.* 387. (11 *E. C. L.* 387.) Others have clearly held the contrary. In a modern case, *Park*, J. said, there was a difference of opinion among the judges on this subject. *Rex* v. *Spencer*, 7 *Car. & Pa.* 776. (32 *E. C. L.* 731.) But in a case more recent still, *Patterson*, J. says, it is the opinion of the judges, that evidence of any confession is receivable, unless there has been some inducement held out by some person in authority. *Regina* v. *Sarah Taylor*, 8 *Car. & Pa.* 733. (34 *E. C. L.* 608.) Whether this court will come to the same conclusion, it is not necessary to determine in this case. It certainly is going a great way, to say, that the mere opinion of a third person, perhaps a friend having no authority, and pretending to none, advising a person accused of a crime, that it would be better to confess the truth, should of itself prevent the admission of that confession in evidence, lest possibly it may not be true. But in the case before us, we are required to go much farther, not only to reject the confession made to a friend, under such inducements, but also confessions made several days after, to other persons, and apparently unconnected with such inducements. Where a prisoner has been induced to confess, by a promise or a threat, it is, says *East*, a common practice to reject subsequent confessions of the same or like facts, though at a subsequent time. 2 *East's Cr. L.* 658.

So whenever it appears they were made under the influence of having made the former confession; or in consequence of the former confession. 1 *Car. & Pa.* 97. n. a. (11 *E. C. L.* 328.) But where the first confession was made under inducements held out by a person not in authority and unconnected with the prosecution, it is, says *Bosanquet*, J. a nice question whether such subsequent confession cannot be given in evidence. Baron *Hullock* ruled expressly, that they might. *Rex* v. *Tyler*, 1 *Car. & Pa.* 129. (11 *E. C. L.* 343.) And in *Rex* v. *Gibbons*, 1 *Car. & Pa.* 97. (11 *E. C. L.* 327.) *Park*, J. with *Hullock*, B. ruled, that where an inducement had been held out, by a person having no authority, and followed by no confession, but some time after, a confession was made to another person, who presented no inducement, that they had not the least doubt such a confession was admissible.

According to these decisions, then, this evidence was clearly admissible. It is clearly within the rule now adopted by the

judges, that the inducement was not held out by a person having authority ; and no confession was made whatever to the persons who offered the inducement.

But without adopting either of these rules as decisive of the case, we think the true principle is, was the confession so connected with the inducement as to be a consequence of it? If it was not, it must be considered as voluntary.

Look at the facts, then, and see what connexion it can be supposed to have with the inducement. That inducement came from a friend, who, the prisoner must have known, had no authority. It was not addressed to him as a guilty person, but as one who knew something on the subject, and that was the object aimed at, by his friend, who told him it would be better for him to reveal what he knew.

But in fact it produced no confession whatever. The next day, on the 11th of *February*, he stated, that he hired a negro man to commit the murder, and was himself present. The day after, on the 12th, he confessed to the gaoler, that the negro was not guilty, but that two young men, *Beecher* and *Sage*, were associated with him in the murder. On the 17th of *February*, seven days after the conversation with his uncle, he made the admissions objected to. He sends for the gaol-keeper, and tells him he is in such distress of mind that he can no longer eat, drink or sleep, nor get any rest; that he can no longer be guilty of accusing innocent blood ; that he alone was guilty of the murder of *Osborne*, and wishes him to call *Foster* and *Hollister*, who were counsel for the prosecution. They were called, and he repeats substantially the same. He is reminded, that he has accused others, and replies, he hoped thereby to escape the extreme penalty of the law. He is asked, if any one had held out such inducement? He says no one had, but still he had a hope.

The time which had elapsed since the conversation with his uncle, the fact that he then made no confession to him, the fact that he was under such distress of mind, arising from a sense of guilt in his unjust accusation of the innocent—all concur to show, that his confession had no connexion with the inducement placed before him by his uncle. But when, in addition to all these considerations, upon the questions put to him, whether any one had held out to him the hope he indulged, he answers no one had, but that still he had a hope ; we

have all the evidence that his confession was voluntary that we can ever expect under the tortures of an awakened conscience and an impending doom.

*New-Haven, July, 1846.*

The State *v.* Potter.

We see no ground for a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.