Marvin, J.
It appears from the bill of exceptions that the jurors, as they were severally called, were challenged by each side, and each juror was sworn and examined as to his competency. If found competent, and not peremptorily challenged, he took his seat in the box. Eleven jurors were thus seated, when Asa Baldwin was called, sworn and examined as to his competency to sit as a juror. He stated that he had heard of the case; had read an account of it in the papers, and, if true, he had formed an opinion; that he read the account, believed it, and .then formed an opinion. Question by the court: .“Have you now any fixed opinion upon your mind as to the guilt or innocence of the prisoner?” Answer: “I have not.” The court decided that the juror was competent; to which decision the prisoner’s counsel excepted.
The court then asked the prisoner’s counsel if they challenged the juror peremptorily, to which the counsel replied, “ no.” The juror then, by the direction of the court, took his seat with the eleven jurors in the box. Afterwards, and before Baldwin was sworn or commenced to be sworn, and while the other jurors were being sworn, the prisoner’s counsel insisted upon peremptprily challenging the said juror, the prisoner’s peremptory challenges not *227 being exhausted; but the court decided not to allow the said challenge to be made, on the ground that the counsel for the prisoner had waived the right by refusing to do so when asked by the court if they would so challenge him, before the juror was directed to take his seat in the jury box. To this decision the counsel for the prisoner excepted. The juror was sworn as one of the jurors.
The prisoner was “entitled peremptorily to challenge five of the persons drawn as jurors for such trial, and no more.” (Sess. Laws 1847, chap. 134, § 2.) It is claimed by the prisoner’s counsel that this right of challenge is absolute and continuous until the juror has been actually sworn, and that he cannot be prejudiced in this, right by anything said or done by him prior to such swearing. On the contrary, the position of the counsel for the people is that announced by the court at the trial, viz: that the right was waived by refusing to make the challenge when the counsel was asked by the court if they challenged the juror peremptorily. It was said upon the argument that no case in point, decided in this State, had been found. It seems that cases decided in other States are in conflict. I will hereafter notice them. Let us, for the present, consult the co'mmon law. By that there are many kinds of challenges which may be made by the party put upon his trial charged with crime", and the issue raised by the challenge is to be decided by the court, or by triers, depending upon the nature of the challenge. The cause or ground of the challenge is to be stated by the prisoner, and there is to be an inquiry to ascertain the truth of the alleged cause or grounds, and this is to be followed by a decision made by the court or the triers. But in addition, to. these challenges, and entirely independent of them, there is one very properly named peremptory challenge. When the prisoner has a right to make this challenge, the right is full and absolute. It does not depend upon any conditions or circumstances." The prisoner, in effect, says *228 to the proposed juror, “ Stand aside'; I reject you as one of my triers.” By the common law this right only existed in capital cases, but those cases were very numerous in ancient times. The prisoner could challenge peremptorily thirty-five, one less than three full petit juries, and the reason assigned for this number was that the petit jury come instead of the ordeal, and the petit jury of twelve being after the manner of the canonical prerogative, in which the whole pares (the prisoner’s equals or peers) were not on the jury, but a select number chosen . by the criminal himself, as was usual among the canonists, and as four juries were as many as generally appeared to make the total pares of the county, a middle course was adopted, by giving the defendant the liberty to challenge peremptorily any number under three jiyies. (Bac. Ab., Juries, E. E., 9.)
This explains the language we often find, that the prisoner in capital cases is tried by a jury of his own selection. This is in effect so, being limited to • four juries less one . juror from whom to make the selection. The selection is made by rejecting all except those he selects or desires for his trial. English statutes and otir statutes have reduced the number of peremptory challenges; and our statute has also extended the right, limiting the number, to other than capital cases. And such is the statute of 1847, under which the trial in this case was had. But to ascertain the character of the right we must consult the common law.
The question in this case is, at what time and under what circumstances does this absolute right of peremptory challenge ceáse ? I should have said, were there no decisions to the .contrary, until the juror proposed by the people had become a juror in the case; and such he certainly is not until he is fully charged with the case, that is, sworn “well and truly to try, and true deliverance make” between the people and the prisoner whom he had *229 in charge, etc. Suppose the proposed juror shall fall down in a fit just as he is about to be sworn, would not the court have the right to excuse him, and cause another to be called, though the prisoner should object ? I think no one will doubt this; and yet if he had been sworn and then become sick, or had died, the trial could not proceed.
In England, in capital cases, the clerk addresses the prisoner, in substance, thus (the jury being called and appearing): “ These good men called and appearing are to pass on your life and death, therefore if you will challenge any of them, you are to do- it before they are sworn.” (Bac. Ab. Jurist, F.) As to the right of peremptory challenge and the warrant for it, see 4 Black. Com., 353; and the-application of the right in Bow. Title, Juries, E; of Peremptory Ghallenges.
The counsel for Lindsley has quoted largely from Gol. John Morris’ case, tried for treason in 1649 (4 Howell’s State Trials, 1255). So far as it bears upon the precise question under consideration, it may be stated thus: The prisoner excepted against one Brooke. The court: • “ Sir, he is sworn, and you speak too late.” ' Morris: “My lord,I appeal to himself whether he be sworn or no.” Brooke: ‘f Sir, I am not to answer you but the court; my lord, I did not kiss the book.” Court: “ Sir, that is no matter; it is not necessary.” The clerk said: “ Sir, he is recorded sworn; there is no disputing against the record.” The plain inference from this is that the right continues until the juror is sworn. The court conceded the right, and put its refusal to recognize the challenge expressly upon the ground that the juror had been sworn. But it will be said that there was no prior waiver of the right in the case, and that is so. I confess that I cannot very well comprehend this idea of waiver in such a case. The right is absolute until the juror is sworn, and yet it is said that this right may be waived in a manner which will deprive the prisoner of the right to resume it, though the fact *230 which bars the right has not yet happened. Upon what principle is he to be estopped ? For it comes to this: he is to be barred or estopped by reason of something he has said or done.
My judgment will not assent to this view. It seems to me a dangerous innovation of a clear and absolute right secured to the prisoner. In the case State v. Patten (18 Conn., 166), the court inquired of counsel whether any reason for a peremptory challenge then existed -that did not exist when they before declined to exercise the right, and the counsel answered in the negative; and the court then decided that it was too-late to challenge peremptorily. As we have seen, the right is absolute. Blackstone says: “Every one-must be sensible what sudden impressions and unwarrantable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner, when put to defend his life, should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceiyed a prejudice, even without being able to assign a reason for such dislike.” (4 Black. Com., 353.) Now if the court can, at any time, qualify this right by asking for a reason,
I suppose the court will have the right to take into consideration the reason assigned, and pass upon it. If the reason is not satisfactory to the court it will be rejected. Suppose the prisoner should say, I have conceived an unaccountable prejudice against the juror; I dislike him but I can assign no reason for the dislike. The court may say, this is frivolous, this is trifling. Again suppose, after the prisoner had declined to challenge the juror, and he had taken his seat in the box, the prisoner is informed . of some fact which renders the sitting of the juror in his cause absolutely dangerous, and yet the fact is of such a-nature as greatly to prejudice or endanger the prisoner’s case, if made public; ig the prisoner to be' compelled t© *231 disclose it to the court? And if so, as I suppose, the court is still to pass upon the reason. In other words, and it comes simply to this, the prisoner may be deprived of the right of peremptory challenge, for a period shorter or longer, before the juror. is sworn. It may be hours, depending upon the practice as to the time of swearing the jury, whether each juror is sworn when he is called and accepted, as is the practice in capital cases, or not . sworn until the box is full.
The counsel for the people has been diligent in collecting the cases in this country. The State v. Patten (18 Conn., R. 166) is claimed to be in point.
The court in that case recognize the absolute character of the right, and that it must be fairly awarded to the prisoner, but that the time when that right is to be exercised is a matter of practice in empaneling the jury. The court refer to the practice in England of swearing each juror separately, as he is called, and that the peremptory challenge must, of course, be made before the juror is sworn. The practice in Connecticut is to call the juror, and if found competent and no peremptory challenge is made, he is directed to take his seat; and that course is pursued until a full jury is obtained, and then the oath is administered to them all at onpe. The court held that the effect of the practice in both cases is the same. -In the one case, the prisoner’s opportunity is closed when the juror is sworn; in the other case, when he is directed to take his seat. That by the Connecticut practice the prisoner had an additional advantage; that if anything new had occurred since the juror was directed to take his seat, the prisoner will not be absolutely precluded from taking the benefit of it, as he is in England, after the juror is sworn. I have thus stated the pqsition of the Connecticut court, and perhaps no very serious objections can be made to the practice thus established—and it is clearly a matter of practice—under their statute, giving the right to chai *232 lenge peremptorily twenty jurors' “ summoned and empanneled.” . The court remark upon this language of the statute, “ summoned and empanneled,” and claim that the court may establish the practice under it, as to the time when the right of challenge is to be exercised.
It will be noticed that the court held the common law to be, as administered in England, that the right continued up to the actual swearing of the juror. That is precisely what is claimed in this case by the prisoner's counsel. • The Connecticut court claims that it gives the common law full effect, and in a manner not prejudicial, to the' prisoner; that the delay to swear the juror cannot prejudice him. Now, how can we be sure of this? When the juror is actually sworn, the rights of the parties are usually fixed, and the prisoner has a right to insist upon his being one of Ms triers. But at any time prior to the actual swearing, I suppose the Connecticut court would exercise the power of excusing the juror on account of sickness, or if he should die the trial would not be arrested. .
If it were a question of practice, and that, too, influenced in some measure by the language of a statute, it may well be considered whether the Connecticut practice should be adopted in this State. Our statute gives the right “ peremptorily to challenge twenty persons drawn as jurors for such trial, and no more.” (2 R. S., 734, § 9.) By the act of 1847 (applicable to the present case),the number is “five of the persons drawn as jurors for such trial, and no more.” It is thus seen that the language of our statute and that of the Connecticut statute differ. Whether this difference should affect the question it is not necessary to say; but it is proper to notice that the Connecticut court, in speaking of their statute, say-that the jury form a jury when thus empaneled (that is, sworn, as the counsel claimed they should be to satisfy the statute) is true, but that they are not empaneled until sworn is not true; that a jury are said to be empaneled when the sheriff *233 has entered their names into the panel—a little piece of parchment—citing Co. Litt., 158 b. The court then, in view of the statute giving the right to challenge jurors “ summoned and empaneled,” make it a question of practice as to the time when, during the forming of the jury, the right should be exercised. Our statutes use the language, “ persons drawn as jurors for such trial;” that is, persons whose names are drawn by the clerk from the jury box. There are certainly no words of limitation. The right of peremptory challenge, as to the time when it is to be exercised, is left as it was at common law when our statutes were enacted; and I certainly doubt the power of the court to restrict or abridge this right, because of a change in the manner of empanneling and swearing the jury. I am not in favor of introducing the Connecticut practice into this State. I think the general understanding of the courts and the bar in this State is, that the right of peremptory challenge is secured to the prisoner until the juror is sworn. This rule is certain and easy of application.
In Hendricks v. Commonwealth (5 Leigh, 707), the court, on the trial, refused, as in the present case, to permit the prisoner to retract his election of a certain juror, and to challenge him peremptorily. The appellate court were “ unanimously of the opinion that the right of a prisoner to challenge any juror peremptorily is absolute at any time before the juror is sworn, and that no circumstance can bring that right within the discretion of the court so long as it is confined to the number of peremptory challenges allowed bylaw.” This case is in point. Beauchamp v. State (5 Blackf., 308) is to the same effect, and so also is Manly v. State (7 Blackf., 593); and so Hooker v. The State (4 Ohio R., 348); and so also The People v. Kahle (4 Cal. R., 198). The counsel for the people cited, upon the argument, two or three other cases. Some of them I am not able to consult. The decision in the Oommonwealth *234 v. Angus (7 Metc., 500) evidently depended upon a statute. If was decided at the trial that the right of peremptory challenge must be exercised, if at all, before the jurors are interrogated by the court concerning their bias and opinions. Clearly we have no such law or practice in this State. As I understand, the weight of authority, as evidenced by the decisions in the States, is decidedly in favor of the position that the right of peremptory challenge continues until the juror is sworn.
I think the court erred in not allowing the prisoner to challenge peremptorily the juror Baldwin, and that the judgment must be reversed and there must be a new trial.
There are several other exceptions in the iecord, but the same questions may not arise upon the new trial, and I do not think it necessary to express any opinion upon them.
.Davis, J., concurred.
Judgment reversed and new trial ordered