reason for a reversal of the conviction. *Code Crim. Pro.*, § 572, &c. We believe no error was committed upon the trial prejudicial to the defendant, and that the judgment should be affirmed.

All concur, except RAPALLO, J., absent.

---

## Court of Appeals.

### *May*, 1886.

## PEOPLE *v.* CARPENTER.

#### (Affirming 4 *N. Y Crim. Rep.* 39.)

#### MURDER—CHALLENGE TO JUROR—EVIDENCE.

Where the defendant after an ample opportunity to exercise his right of challenge, has, upon the completion of empanelling of the jury, a number (in this case fourteen) of peremptory challenges unused, the jury must be considered as being free from reasonable objection on the part of defendant, and competent, in all respects, to try the case.

Defendant's challenges for cause of two jurors having been overruled, he challenged them peremptorily. Upon the completion of the jury, he still had a number of unused peremptory challenges. *Held*, that even if the court erred in overruling the two challenges for cause, defendant was not injured.

The existence of an abstract opinion on the part of a juror that a certain defense, *e. g.*, insanity, had been often interposed when it did not, in fact, exist, does not furnish any presumption that such juror has a prejudice or bias against such defense when honestly interposed, and such juror is competent when he testifies substantially that he can render a just verdict upon the evidence in respect to that defense, without prejudice or bias against the defendant interposing it.

There is no rule of practice which requires the court to postpone the swearing of jurors until the panel is wholly completed, and the statute being silent as to the time of swearing, such time is within the discretion of the trial judge. But, *semble*, that under the Code of Criminal Procedure (chap. 3), each juror should be sworn as he is called and accepted by the parties.

The knife, by means of which the homicide was committed, was shown to a medical witness, and he was asked whether that knife would produce

VOL. IV.—23

the wound of deceased. *Held*, that it was no error to overrule an objection to the question as irrelevant, incompetent and immaterial, it being undisputed that the knife caused the wound, and the question calling for cumulative testimony of an uncontroverted fact.

A question was asked on cross-examination of a medical expert witness of defendant: " Do you consider Dr. McDonald " (who was to be called as a witness for the prosecution in the case), " an authority on mental diseases." *Held*, that the question being immaterial at that stage of the case, defendant sustained no injury by the overruling of his objection thereto, and that if subsequent events of the trial (*e. g.*, the calling of Dr. McDonald as a witness) rendered the question improper, the objecting party should have moved to strike out the evidence, and except to a refusal so to do.

Defendant requests the court to charge that, " If some controlling disease was, in truth, the acting power within him (the prisoner), which prompted the act complained of, he is not responsible." *Held*, that a refusal to so charge was not error.

APPEAL by defendant, John Carpenter, from a judgment of the General Term of the Supreme Court in the First Department, of 22d January, 1886, affirming a judgment of conviction of the Court of Oyer and Terminer of New York county of 3d July, 1885, convicting the defendant of murder in the first degree.

The facts appear in the report of the case in the General Term, 4 *N. Y. Crim. Rep.* 39. See, also, the report of the first appeal, 3 *N. Y. Crim. Rep.* 92, reversing a prior conviction and granting a new trial.

*A. D. Pape* and *S. S. Blake*, for defendant, appellant.—I. The point as to challenges to jurors sufficiently appears at 4 *N. Y. Crim. Rep.* 40–42.

II. It was error in the court to allow this question to be put to Deputy Coroner Messemer. Q. " In your statement you say that these wounds were caused by a crescent-shaped knife; would a knife, such as I now show you, produce the wounds which you have described?" A. " Yes, sir."

The exception was well taken. In Wilson *v.* The People (4 *Park.* 619), it was held, on a trial for murder by violence, that it was not competent for the physicians " who made the post-mortem examination, after having described the appearance of

the wounds to the jury, to give their opinions in evidence as to the kind of instrument by which the wound was caused." The questions there condemned were: "From your examination of the wounds you have described, what kind of an instrument was it caused by, in your opinion?" and "From your examination of the wound which you have described, what, in your opinion, was the wound caused by?"

The question to Mr. Messemer was just as objectionable as these. It was just as improper to ask whether a knife exhibited to a witness would produce a given wound, as to ask what kind of a knife would produce a given wound. This is not a question of *science.* A jury can judge just as well as an expert. *Facts*, not *opinions*, are what should be furnished to the jury, and they, from that, are to determine the kind of weapon used. People *v.* Rector, 19 *Wend.*, 574.

III. It was error in the court, at the trial, to allow an expert (Dr. Egan), who proved the prisoner's *insanity*, to be asked this question:

Q. "Do you consider Dr. McDonald an authority upon mental diseases?" Upon cross-examination by the district attorney, Dr. McDonald, a witness for the prosecution, should have been left to stand or fall upon his own merits. He had not then been examined, but was called on the *rebutting* case for the prosecution. The intention was that he should appear when he was called, with a kind of flourish of a trumpet, the prisoner's witness being made his herald.

Was not this establishing the general character of Dr. McDonald for reliability, truth and veracity, when unassailed? How fatal to the prisoner! It enabled the district attorney to tell the jury they ought to accept Dr. McDonald as a guide, because the prisoner's own witness believed in him. It was taking an unfair advantage of the prisoner. His witness was without a support, though compelled to support the witness against him. Adams *v.* Greenwich Ins. Co., 70 *N. Y.* 166; 1 *Greenl. on Ev.* § 469, 14th ed.; People *v.* White, 14 *Wend.* 111.

*Randolph B. Martine*, district attorney (*De Lancey Nicoll*, assistant), for the people, respondent.

RUGER, Ch. J.—Upon the trial of the defendant for murder in the first degree, the uncontradicted evidence established that, on May 26, 1884, he fatally stabbed one Mary Carpenter, his wife, with a knife, by repeated stabs upon her neck, body and breast in the presence of a number of people in the open street, in broad day-light. He had become embittered against her for several reasons, prominent among which was an effort, on her part, to procure a decree of divorce, and for which purpose she had caused papers to be served upon him while he was imprisoned at Sing Sing, upon a former conviction for crime. After this time, and while still imprisoned, in speaking of her action in respect thereto, he, on two or three occasions, expressed his intention to kill her.

Upon being relieved from prison in April, 1884, he attempted to discover her place of residence, and, having found it, frequented its vicinity for some weeks previous to the homicide. On the day in question he waited near the corner of Third avenue and Twenty-sixth street for several hours, armed with a weapon resembling a shoemaker's knife, until his wife, accompanied by an unmarried sister, appeared in the street near him. As they approached he attacked both ladies with his knife, cutting them, and continuing to strike his wife, following her into an adjoining building where she fled for refuge, until from his repeated blows she sank to the ground and expired.

The only defense attempted on the trial was an effort to establish the insanity of the defendant. This was the sole issue before the jury, and considerable evidence was taken both for and against the theory of the defense. No evidence offered by the defendant upon this issue was excluded, and the case was submitted to the jury under instructions evincing the tenderest regard for his rights, and no exceptions were taken thereto save in respect to one unimportant particular.

The trial judge seems to have conducted the trial with great care, and a determination that no material error should occur to his rulings which would operate to the defendant's disadvantage.

The jury found the defendant guilty of the crime charged, and the judgment of the court rendered on the verdict has been approved by the General Term, and must be affirmed here un-

less we find that some error was committed during the trial which prejudiced the rights of the defendant.

After a careful examination of the case, we are constrained to say that no such error was committed. The exceptions presented for our consideration relate to those subjects only, viz.: the charge of the court, the admission of alleged incompetent evidence against the prisoner, and errors claimed to have occurred in the course of the selection of the jury. They may all be characterized as of trivial importance.

We will first consider those relating to the formation of the jury. The individuals who were finally selected to hear and determine the case were free from any objection, and were voluntarily accepted by the defendant after ample opportunity afforded him to raise any objection he desired to as to their competency, or to procure their exclusion by way of peremptory challenge. When the panel was completed, the defendant had remaining the right to make fourteen peremptory challenges, and the power of excluding any and all of the persons sitting on the jury if he had desired to do so, and had, at the proper time, chosen to exercise his right of peremptory challenge. The jury, as selected, must, therefore, be considered as being free from any reasonable objection which could have been made against them by the defendant, and to have been competent, in all respects, to hear and determine the case.

It is, however, urged that White and Lehmaier, two of the jurymen called, against whom the defendant exercised the right of peremptory challenge, should have been rejected for cause, and thus have saved to him two of the challenges to which he was, by law, entitled. The fact that the right to make fourteen peremptory challenges was allowed to lapse for want of occasion to use them, demonstrates that the defendant could not have been injured by decision of the trial court in respect to the jurymen named, however erroneous it might have been. People *v.* Casey, 96 *N. Y.* 115; 2 *N. Y. Crim. Rep.* 194; State *v.* Porter, 18 *Conn.* 166. But we are of the opinion, that the incompetency of these men to sit as jurymen was not successfully established by the evidence. It is unquestionably the right of a person on trial for an alleged crime, to have the issue

made, tried and determined by a fair, competent and disinterested jury, standing impartially between himself and his accusers.    But this right does not extend so far as to enable him to exclude from such jury, persons holding abstract opinions not affecting their capacity to decide, impartially, the particular case upon the evidence produced.    The objection in this case was attempted to be shown, by examining the jurymen as to the opinions entertained by them upon the subject of insanity as a defense to criminal prosecutions.    White testified, among other things, that "my mind is practically clear and unbiased as between the people and this prisoner;" "I have no opinion now as to the guilt or innocence of the defendant;" "if the defense of insanity was interposed, I would have a prejudice against it;" "my answer only implies that I believe the defense of insanity has been misused and abused, and I am not prejudiced against a person who is insane;" "it is a prejudice against sham defenses;" "I don't think that feeling would control or influence my judgment against the defense of insanity."    Lehmaier testified substantially as follows: "I have no prejudice or bias against the defense, except when misused, and I can't tell until I hear the evidence whether it is misused;" "I would go into the jury-box with a bias against that defense."    In answer to the question, "Notwithstanding what you have read, if accepted as a juror, can you so divest your mind of the opinion as to receive the evidence, or consider it, without any bias or prejudice against this prisoner?" he said: "I am sorry to say I think I can; I have an opinion against the misuse of insanity." Upon this evidence the trial judge held both of the jurymen competent, and, we think, correctly so decided.    Commonwealth *v.* Boswell, 16 *Pick.* 160; Commonwealth *v.* Porter, 4 *Gray*, 424. The inquiry here, related to the condition of the juror's mind as affected by the knowledge and information acquired by him as to criminal trials which had theretofore come within the range of his observation and experience, and his answer was, in effect, simply that he thought the defense of insanity had frequently been used in cases where it had no foundation in fact.    Can it be reasonably said that this opinion furnishes any ground for saying, that such a person is incompetent to hear and determine

any case where the defense of insanity is honestly interposed?
We do not think that the existence of an abstract opinion, on
the part of an individual, as to the propriety or impropriety of
certain defenses in cases theretofore coming to his knowledge,
necessarily disqualifies him from sitting as a juror in other cases,
even where such defenses are intended to be made. If the proof
had demonstrated that the proposed juryman did not believe in
the existence of a state of mental derangement, or that such a
condition did not constitute a defense to a criminal prosecution,
quite a different question would have been presented. But a
belief derived from observation and experience, that men have
theretofore interposed a defense which did not, in fact, exist to
prosecutions for crime, does not, in itself, furnish any evidence
or presumption that the person holding such a belief has any
prejudice or bias against such a defense when honestly inter-
posed. As well might it be said that a person who has sat
upon a jury where fraud, or alibi, or incendiarism was the sub-
ject of the issue tried, would thereafter be incompetent to sit on
juries where similar subjects were again to be investigated. It is
impossible for individuals to divest themselves of the effect which
knowledge, information and observation impresses upon their
minds, and unless the impressions produce such an effect as renders
the individual incapable of acting impartially in determining the
particular issue to be tried, they constitute no valid objection
to his competency. The issue in this case was, whether the de-
defendant was sane or insane at the time he committed the homi-
cide; and the fact that the jurymen were of the opinion that
other men were not insane at the time of the commission of
alleged crimes, did not render them incompetent to pass upon
other cases of alleged insanity. Each one of the proposed jurors
testified, substantially, that he could render a just verdict upon
the evidence, in respect to the defense of insanity, without preju-
dice or bias against the prisoner, and this was all that the most
jealous regard for the rights of the prisoner could require from
the jurors selected to determine the truth of the case. To hold
such an objection tenable, would put it in the power of the
criminal to paralyze the administration of justice by asserting
the defense of insanity, and thereby excluding from the jury

those who believed that such a defense had been theretofore dishonestly interposed as a shield for crime. The result of innumerable trials in the past, shows that such a belief is wide-spread, and seriously entertained by the community at large, and to adopt such a test for admissibility to the jury-box, would be to erect an obstacle to the prompt and efficient administration of the law, instead of furnishing a guard for the protection of innocence.

By the express provisions of the Code of Criminal Procedure, unless the evidence shows "the existence of a state of mind on the part of the person in reference *to the case,* or *to either party,* which satisfies the court, in the exercise of a sound discretion, that such person cannot try the issue impartially, and without prejudice to the substantial rights of the party challenging, and which is known in this Code as actual bias," the person challenged shall be declared competent. Subd. 2, § 276, *Code Crim. Pro.* So far as the objection in question is concerned, the jurymen challenged were wholly free from any knowledge or information as to the condition of the defendant, or to the facts of the case, which would produce prejudice or bias against him or his proposed defense. There is no pretense that the men did not believe in the existence of insanity, or the validity of that condition as an exemption from responsibility for crime; but the claim is, that because they believed some persons have falsely used that defense, they are, therefore, incompetent to sit in any case where the defense arises. It is true that the further objection was made to the juryman, Lehmaier, that he entertained an opinion as to the guilt or innocence of the defendant, derived from what he had heard from the circumstances of the homicide, which ought to disqualify him as a juror. But we are clearly of the opinion that under the rule established by the Code of Criminal Procedure (§ 376), the proof did not show any such condition of his mind as disqualified him, for this reason, from sitting as a juror.*

The exceptions taken to the ruling of the court, requiring the defendant to make such peremptory challenges as he desired to

---

\* See the examination of the jurors.  3 *N. Y. Crim. Rep.* 40–42.

each juror as he was called and examined, and before he was individually sworn, is pressed upon our attention, and the further exception, raising the same question, to the rejection by the court of a peremptory challenge to one of the jurors, after he had been individually sworn and the panel had been completed, but before they had been sworn in a body as a completed panel. The position of the court was deliberately taken at the commencement of the trial, and communicated to the defendant's counsel, to the effect that they would be required to make such peremptory challenges as they desired to interpose to each juror, after he was called and examined, and before he was sworn in as a juror. Each of the jurors in the panel was called, examined and accepted by both parties before he was sworn in, and the complaint of the defendant is, that the right of peremptory challenge which, in some cases, he had deliberately withheld until all of the jurors were sworn, was not continued to him after the full panel was secured. We are not aware of any authority for this position.

The Code of Criminal Procedure provides that, "before a juror is called, the defendant must be informed by the court, or under its direction, that if he intend to challenge an individual juror, he must do so when the juror appears, and before he is sworn" (§ 369). It is not claimed that this requirement was omitted. "A challenge must be taken when the juror appears and before he is sworn, but the court may, in its discretion, for good cause, set aside a juror at any time before evidence is given in the action." It is not claimed that any case was made, calling for the exercise by the court of the discretion thus provided for, and the validity of this exception must depend upon the question, as to whether there is any rule of practice which requires the court to postpone the swearing of the jury until the drawing of the panel is wholly completed. We have been referred to no authority to that effect, and the language of the provision quoted seems to imply, that each juror is to be sworn as he is called and accepted by the parties. In the People *v.* Damon (13 *Wend.* 351), Judge SAVAGE, in a capital case, says: "The regular practice is to challenge jurors as they come to the

book to be sworn, and before they are sworn; but I apprehend this is matter of practice, and may be departed from in the discretion of the court." This is believed to be the general practice in the courts of this State, and such also seems to be the rule in the English courts (Reg *v.* Frost, 9 *Car. & P.* 129), and also in the courts of many of the sister States. Epps *v.* State, 19 *Ga.* 102; McFadden *v.* Com, 23 *Pa. St.* 17; Rast *v.* State, 61 *Ala.* 89; State *v.* Porter, 18 *Conn.* 166.

The statute being silent as to the time when the jury shall be sworn, we think it was within the discretion of the trial court to determine the practice, and that no impairment of the prisoner's legal rights is made, after he has been allowed a fair opportunity to interpose a peremptory challenge to a proposed juror, that he is foreclosed as to the further exercise of the right by the administration of the oath to the juror, at any time after he has been examined and accepted.

The objection was taken to the question put to a physician, "In your statement you say that these wounds were caused by a crescent-shaped knife; would a knife, such as I now show you, produce the wounds which you have described," upon the ground that it was incompetent, irrelevant and immaterial. The objection was overruled, and an exception taken. This objection does not raise the question that the evidence was inadmissible, because it called for an opinion, but, aside from that answer to the exception, we see no error in the ruling. The knife with which the fatal wounds were proved to have been inflicted, was taken at the time of the homicide from the hand of the prisoner, and produced and identified on the trial beyond controversy. No dispute arose on the trial as to the character of the weapon used, or but that the identical knife produced was the instrument with which the defendant committed the crime. The evidence was merely cumulative upon an uncontroverted point, and could, by no possibility, have done harm to the rights of the prisoner. A similar question was held to be proper in People *v.* Gardiner (6 *Park. Crim. Rep.* 157). In Wilson *v.* People (4 *Park.* 619), the issue was as to the cause of death, and the objectionable question called for the opinion of the witness as to the kind of instrument used in producing certain wounds.

It was held improper. This case is clearly distinguishable from the one under discussion.

The exception taken to the decision of the court in overruling the objection to the question: "Do you consider Dr. McDonald an authority upon mental diseases," put to an expert produced by the defendant upon cross-examination by the people is claimed to have been well taken. It is said to have been improper, because the prosecution intended to call Dr. McDonald as one of the people's witnesses on the trial. That fact certainly did not appear to the trial court when it passed upon the objection, and we do not see how that ruling could be made erroneous by the subsequent action of the people, in calling the person named as a witness. The question, when asked, was quite immaterial, and no error was then committed by the court in allowing it to be answered. If the subsequent events of the trial rendered it improper, the remedy of the party objecting was to move to strike out the objectionable evidence, and except to a refusal to do so.

Other objections were made to questions put by the people to defendant's witnesses by way of cross-examination, but we think there were none that were important, or exceeded the latitude which the court was authorized to allow by way of cross-examination.

The only exception remaining which is deemed of sufficient importance to merit particular notice, is that taken to the refusal of the court to charge according to the request of the prisoner's counsel. "If some controlling disease was, in truth, the acting power within him (the prisoner) which he could not resist, or if he had not a sufficient use of his reason to control the passion which prompted the act complained of, he is not responsible." The principle of this request is not only impliedly condemned by sections 21 and 23 of the Penal Code, but has been held to be untenable by the express decision of this court. Flanagan *v.* People, 52 *N. Y.* 467. Judge ANDREWS there says: "Indulgence in evil passions weakens the restraining power of the will and conscience, and the rule suggested would be the cover for the commission of crime and its justification. The doctrine that a criminal act may be excused upon the notion of an irresistible

impulse to commit it when the offender has the ability to discover his legal and moral duty in respect to it, has no place in the law."

The learned trial judge had laid down the rule governing the jury in considering such a defense in the language of the statute, which furnishes a simple, clear and intelligible guide for their deliberations, and from a careful and painstaking examination of the evidence in the case, we see no reason to suppose that they have mistaken as to its character and effect, or the legal principles applicable thereto.

It seems quite impossible to resist the conclusion that the crime was committed by the defendant with deliberation and premeditation, and with a full consciousness of the wicked and unlawful character of the act he proposed to do, and that the jury were justified in rendering a verdict of guilty against him.

The judgment should be affirmed.

All concur, except RAPALLO, J., absent.

---

## Supreme Court—General Term—Fourth Department.