# MILAN VS. THE STATE.

An assault with intent to kill, as created by our statute, (*Gould's Dig. ch.* 51, *part* 3, *art.*, 5, *sec.* 1; *part* 10, *sec.* 5,) is a felony; and an indictment·for such offence must charge that the assault was made feloniously, etc., and also that the intent was felonious, etc.

The record should always show the empanneling of the grand jury that found the indictment; and that the indictment had been returned into court by the grand jury. (13 *Ark.*, 720; 19 *Ark.*, 178.)

By the common law, challenges to the polls for cause, are for principal cause, or to the favor. If for principal cause—as where the matter imports absolute bias or favor—it is tried by the court on the testimony of the juror to the exclusion of other evidence, and if found true, the law *per se* pronounces the juror incompetent. If to the favor,—as where it is supposed the juror is under undue influence or prejudice—it is tried, under the direction of the court, by triers, on other testimony to the exclusion of the oath of the juror; and the finding is conclusive unless the triers are improperly directed.

The practice, as modified by our statute is, that challenges to the polls, whether for principal cause or to the favor may be tried by the court, or by triers at the election of the party challenging : if tried by the court, then on the oath of the person challenged; if by triers, then on other testimony; and if the challenge be for favor, then the finding of the court is as conclusive as if it had been determined by triers. (13 *Ark.*, 720.)

In view of the constitutional provision which guarantees to the accused a trial by an impartial jury, and of that purity and sense of justice which should characterize the administration of the law, a person who states that he would convict a colored man on less evidence than he would a white man for the same offence, should be rejected as a juror on an indictment against a colored man.

A witness who had given evidence before the examining court in a criminal case, may be interrogated on the trial in relation to such evidence, for the purpose of laying a foundation to contradict him.

Although an attorney is bound to withhold, and will never be compelled to disclose any information which he knows only through professional relations to his client, he may be compelled to testify against his client as to other matters.

The testimony of a witness given before the examining court, which was reduced to writing, is competent evidence on the trial for contradicting him—a foundation having been laid for the introduction of such evidence.

*Appeal from White Circuit Court.*

Hon. K. H. POWELL, Circuit Judge.

TURNER and WATKINS & ROSE, for appellants.

The circuit court erred in empanneling upon the jury men who were disqualified by prejudice, to act as impartial jurors. The legal rights of the negro in the courts when charged with crime are the same as the white man's; and a jury as impartial and unprejudiced must be awarded to him as is accorded to the white man. The bill of rights (*sec.* 11) secures to every one charged with crime, the right to be tried by an impartial jury; and makes no distinction between the white and the black man, and the courts can make none. As to the disqualification of a juror by having formed or expressed an opinion in the case, see *Dig. ch.* 52, *sec.* 163; *Stewart vs. State,* 13 *Ark.,* 727, and *Meyer vs. State,* 19 *Ark.* 156.

A party is always allowed to impeach the credit of a witness by proving that he has made statements out of court contrary to his testimony on the trial—the witness being first interrogated as to those statements, as was done in relation to the statements of Mary Branch. 1 *Green. Ev.,* 462.

The refusal of the court to compel McRae to testify was a glaring error. The fact that he was counsel for the prosecutor afforded no excuse whatever, nor can any be given.

The written testimony given before the examining court was competent evidence to discredit the witnesses, who had denied, on the trial, the statements they had made on the examination. *Atkins vs. State,* 1 *Ark.,* 568; *Ros. Cr. Ev.,* 236.

The indictment is clearly defective, if not a nullity, in failing to charge that the assault was willful, felonious and of malice aforethought, and that it was made with a felonious intent. *Dig.* 336, *sec.* 31; *State vs. Eldridge,* 7 *Eng.,* 608; *Whar. Cr. Law,* 552.

Mr. Attorney General C. T. JORDAN, for the state.

The court below did not err in overruling appellant's challenge of jurors. See 13 *Ark.,* 147; *Gould's Dig., page* 644; *Wharton's American Law,* 854.

As to witnesses testifying on the final trial, of statements made before the committing court. *Atkins vs. The State*, 16 *Ark.*, 588; *Roscoe's Evidence*, 236; *Greenleaf on Evidence, sec.* 513.

As to granting a new trial on the grounds of the verdict of the jury being contrary to the evidence. *Walker vs. The State*, 4 *Ark.*, 88; *Wharton's American Law*, 873; *Chittwood vs. The State*, 18 *Ark.*, 453.

Motion in arrest of judgment. 1 *Chitty Cr. Law*, 663; *Gould's Digest, ch.* 52, *page* 407.

Mr. Justice COMPTON delivered the opinion of the court.

Milan—a man of color—was convicted in the circuit court of White county, of an assault with intent to kill, and was sentenced to the penitentiary. He moved in arrest of judgment, and for a new trial, which motions were overruled, and the case now comes before this court for consideration.

In determining the several questions presented, we will first consider those which relate to the sufficiency of the indictment. The indictment charges, with requisite certainty of time and place "that a colored man, named Milan, on etc., at etc., with force and arms, in and upon one Haywood Branch, then and there being in the peace of God and the state, did make an assault, with intent to kill, and him the said Haywood Branch then and there feloniously, wilfully and of his malice aforethought, did, with a certain pistol, then and there had by said Milan, beat, bruise and attempt to shoot, kill and murder, and other wrongs to the said Haywood Branch, contrary, etc." By our statute (*Gould's Dig., chap.* 51, *part* 3, *art.* 5, *sec.* 1) it is provided, that "whoever shall feloniously, willfully and with malice aforethought, assault any person, with intent to murder, kill, rob or commit a rape, or shall administer, or attempt to give any poison or potion, with intent to kill or murder, and their counsellors, aiders and abettors, shall, on conviction thereof, be imprisoned in the jail and penitentiary house, not less than three, nor more than twenty-one years;" and by section 5, part 10, of the same chapter, it is

further provided that "the term 'felony,' as used in the laws of the state of Arkansas, is defined to be any crime, or offence, which by the laws are punishable, either capitally, or by imprisonment in the penitentiary, or when any portion of the punishment inflicted shall be imprisonment in the penitentiary." Construing these provisions together, as they must be, they create the offence for which the accused was indicted, and make it a felony. No such offence existed at common law. An assault with intent to kill was by the common law an assault only, and might be charged with or without the aggravating circumstances, that is, the intent to kill. Not so of an assault with intent to kill, as created by the statute. Under the statute, the intent to kill *must* be charged—by the common law it may or may not be laid. The statute creates a new offence, and declares it a felony. The indictment must, therefore, be framed upon the statute, according to the rules of the common law, for framing an indictment for a felony declared by the statute. And these rules require, in all cases, that the act constituting the offence must be charged to have been done feloniously. From what has been said, the unavoidable conclusion is, that the indictment, in the case before us, to have been good upon the statute, should have charged that the accused, feloniously, wilfully and of his malice aforethought made the assault, as well as that the intent was, feloniously, wilfully and of his malice aforethought, to kill. To charge that the accused made an assault with intent, feloniously, wilfully and of his malice aforethought, to kill, is to charge a misdemeanor only, with the aggravating circumstance of the intent to commit a felony. Failing to charge the assault as required by law the indictment is fatally defective. See *Williams vs. The State*, 8 *Hump.* 585, *and authorities there cited*; 2 *Hale*, 184–5. The indictment is also defective, for the reason that it nowhere charges an intent, feloniously, wilfully and of malice aforethought, to kill. The phraseology "with intent to kill," without more, is not sufficient. The killing intended must be a felonious, wilful and malicious killing, and should be so alleged, in order that the character and extent of the crime intended to

be perpetrated may distinctly appear.  *Curtis vs. The People*, 1 *Scam.* 285.

Our attention has been called to the fact that the transcript of the record in this case does not show that the indictment upon which the accused was tried, was found by a legally organized jury—in other words, that the record entry or caption, showing the empanneling of the grand jury, at the time at which the indictment purports to have been found, is omitted.  The uniform practice in this court has been to supply this omission by certiorari, *ex officio*, even after error joined, for the purpose of affirming, where no other error appears in the record, as indicated in *Stewart vs. The State.* 13 *Ark.*, 720, and *Green vs. The State*, 19 *Ark.*, 178.  The record also fails to state that the indictment was returned into court by the grand jury; nor does it show that any note was made by the clerk upon the back of the indictment of its having been returned into court and filed.  This was held to be good ground for reversal in *Green vs. The State, supra.*  There the prisoner had pleaded to the indictment and procured a change of venue; and the court, after an extended review of the authorities, said:  " We would not reverse the judgment of the court below on the ground in question, if there was any competent ' legal evidence in the transcript, either of an entry of record or an endorsement upon the indictment, that the grand jury had returned the indictment into court, but there is no such evidence; and the course of decisions of this court does not warrant the indulgence of presumptions against the prisoner, in cases involving life or liberty in reference to matters vital to the regularity of the prosecution."

Having disposed of the questions deemed material, arising upon the motion in arrest, we will next consider those upon the motion for a new trial.

It appears from the bill of exceptions that in empanneling the jury who tried the case, the following jurors, namely, Henry Blevins, Henry Martin, Frank Gill, Samuel Neely, Luke T. Hutchinson, Green Wright, Laban C. Elliott, Harrison Blevins,

Charles Gillam, and Benjamin Bolton were called, and who, after having been sworn on their *voir dire* and examined by the attorney for the state, were severally put to the defendant, who propounded to each of them the following interrogatory : "Do you feel that you can act as a juror in this case and decide it, according to the law and the evidence, with the same impartiality and want of prejudice toward the defendant that you would if a white man were on trial?" To which they each answered : "I don't think I can." The attorney for the state then put the following question : "Don't you believe that you can go into the jury box and do the defendant impartial justice, according to the law and the evidence ?" To which each answered : "I do." Whereupon the defendant's interrogatory was repeated and answered as before. The defendant then propounded to the said Laban C. Elliott, Charles Gillam and Harrison Blevins the following interrogatory : "Would you acquit a negro charged with an assault with intent to kill a white man, upon the same evidence that you would acquit a white man on a like charge?" To which each answered : "I don't think I could." The juror, Benjamin Bolton, on further examination, was asked whether he had formed and expressed an opinion as to the guilt or innocence of the accused ; and answered that he had from rumor, but that the opinion so formed was not such as to prejudice his mind, though it would require evidence to remove it.

The party challenging the before mentioned jurors not demanding triers, the court proceeded to try the issue, and found the jurors competent, and they were sworn upon the jury—to which finding the defendant excepted.

At common law, a challenge to the polls, for cause, may be either for principal cause, or to the favor. A challenge for principal cause is always tried by the court, and is for some matter which imports absolute bias or favor. When the fact alleged is put in issue the court has only to find whether it is true or not. If true, the law adjudges the juror incompetent and he is ex-

cluded. As, for instance, if the juror has formed and expressed an opinion as to the issue to be tried, or is of kin to either party, or if he was one of the grand jury who found the particular bill— in all such cases when the truth of the fact is ascertained, the law *per se* fixes the incompetency. A challenge to the favor is not tried by the court, but is submitted to triers, under the direction of the court, and takes place when, though the circumstances are not such as to fix the juror's partiality as a conclusion of law, as in case of challenge for principal cause, there is nevertheless reasonable ground to suspect that he will act under some undue influence or prejudice. The causes of such challenge are numerous, and dependent on a variety of circumstances; as that the juror challenged and the opposite party are in habits of great intimacy, or are partners in business, and the like. The question to be tried, in such case, is whether the juror stands altogether indifferent between the parties. In the nature of things, no rule can be laid down that will enable the triers, in every case, to determine with certainty, that the juror is or is not biased. It is not a question of law, but is matter of *fact* to be submitted to the common sense of the triers, who must find that the juror stands impartial, or they should reject him. The court may direct what evidence is admissible upon the question of indifference; but its weight and influence in proving the allegation of favor or bias, are for the triers alone to determine. *Freeman vs. The People*, 4 *Denio* 9; *Wharton Crim. Law*, 836, 843, 858. These rules of the common law have been modified, in some respects, by our statute (*Gould's Dig., chap.* 52, *sec.* 52, *et seq.*;) and this court, in *Stewart vs. The State, supra*, took occasion to indicate the extent of the modification, as also what was conceived to be the correct practice, under the statute, in reference to challenges to the polls. It is there said: "Construing this statute with reference to the common law, we think the correct mode of proceeding under it, as to challenges to the polls for cause, is that when a juror is presented, it is the duty of the court to inquire first of the attorney for the state, and then of the

defendant, 'do you accept this juror, or do you challenge him?' If challenged for cause, the party should declare for what cause or causes he so challenges him. Then the court should inquire, 'how will you have this challenge tried, by the court or by triers?' If by the court, the cause, if disputed, is to be tried by the court upon the oath of the person challenged, and upon no other evidence. If the party challenging shall elect to have the cause of challenge in dispute determined by triers, it is to be tried on other evidence to the exclusion of the oath of the person challenged." And in another part of the opinion, it is said that "unless it be made to appear upon the record that the party challenging demanded triers, the presumption will be that he elected to have the cause of challenge tried by the court; and in challenges for favor, the finding of the court as to the fact whether the juror stands indifferently between the parties is equally conclusive, as if found by triers." Thus abolishing in form, though not in substance, two distinctions which existed at common law between challenges to the polls for principal cause and to the favor.

The bill of exceptions states that the several jurors were challenged "for cause," but fails to show whether for principal cause, or to the favor—because all challenges, except such as are made peremptorily, are *for cause*. We infer, however, from the examination of the jurors, that the challenge was to the favor; and treating it as such, we do not hesitate to say that, in view of the constitutional provision which guarantees to the accused a trial by an impartial jury, and of that purity and sense of justice which should ever characterize the administration of the law, among an enlightened people, the jurors challenged, especially those who stated that it would require less evidence to convict the accused than it would a white man on trial for the same offence, ought to have been rejected. But, though we differ in opinion with the circuit judge, sitting in lieu of triers, in regard to the weight of evidence upon the issue as to whether the jurors were, in point of fact, biased or not, we cannot for that reason,

24

consistently with the established rules of law, disturb the finding. In *Freeman vs. The People, supra*, it is laid down that the finding of triers, if they have been properly directed, is not subject to revision. The court said—speaking of the issue on a challenge to the favor—*"that* must be determined by triers, who are to pass upon the question of actual bias or favor. They are final judges upon the matters submitted to them ; and from their decision, when properly instructed, the law has provided no appeal." In *Mima. Queen and child vs. Hepburn*, 7 *Cranch* 290, which was a suit for freedom, one of the jurors was challenged for favor; and on being questioned, said that he had formed and expressed no opinion as to the particular case, but that such was his detestation of slavery that in a doubtful case he would find a verdict for the plaintiff, and that he had so expressed himself in regard to the case then on trial. He also stated that if the testimony were equal he should certainly find a verdict for the plaintiff. Upon this statement the circuit judge rejected the juror; and on appeal to the supreme court of the United States, the judgment was affirmed. MARSHALL C. J., remarking upon the point as to the competency of the juror, said: "Jurors ought to stand perfectly indifferent between the parties,.and although the bias which was acknowledged in this case, might not perhaps have been so strong as to render it positively improper to allow the juror to be sworn on the jury, yet it was desirable to submit the case to those who felt no bias either way; and therefore the court exercised a sound discretion in not permitting him to be sworn." In *Costby vs. The State*, 19 *Geo.* 614, LUMPKIN J., in delivering the opinion of the court, said: " We would not undertake to disturb the finding of triers—why should we that of the court, sitting quoad this point in the place of triers?" And in *Stewart vs. The State, supra*, this court, as above shown, has said that in challenges to the favor, the finding of the court is as conclusive as if found by triers.

At the trial the counsel for the accused asked the witness, Mary Branch, on cross-examination, whether she did not state

in her evidence before the examining court, at West Point, that she saw the accused strike at Haywood Branch after they came out of the cabin in which the struggle had commenced. The state objected to the question, and the court sustained the objection. In this there was error. The question was material to the issue, was put for the purpose of laying foundation on which to contradict the witness, and the court should have required an answer.

It also appears that the accused offered to introduce as a witness Dandridge McRae, Esq., who announced to the court that he was of counsel for the prosecution, and for that reason declined to testify : whereupon the counsel for the accused stated that he did not propose to interrogate McRae as to any matter of professional confidence, and moved the court to compel him to testify—which the court refused to do. This was error. Although an attorney is bound to withhold, and will never be compelled to disclose any information which he knows only through professional relation to his client, it does not follow that he is incompetent as a witness, or may not testify against the client as to other matters.

The testimony of Haywood Branch, taken before the examining court and reduced to writing, was competent evidence on the trial, for the purpose of contradicting him—a foundation for the introduction of such evidence having been first laid as to that witness—and the court erred in excluding it. *Atkins vs. The State*, 16 *Ark.*, 868,

Let the judgment be reversed and the cause remanded for further proceedings.