State v. Wilson.

———o-o-o———

## STATE vs. JAMES WILSON.

The proper process for obtaining jurisdiction of the person of a prisoner who is confined in prison under sentence, in order to try him for another offence, is the writ of habeas corpus directed to the keeper of the prison, specifying the purpose for which he is wanted, and commanding the keeper to have him before the court.

When a prisoner is so produced by his keeper before the court, both are subject to such orders as the necessities of the trial may require, but, until otherwise ordered, the prisoner in contemplation of the law is still in the custody of the keeper. When the trial is concluded, the court may properly order that he continue in such custody under such sentence. Such order is directory and not punitive, and if embodied in the sentence and judgment for the new offence will not render it erroneous.

Therefore, where a prisoner who was in the custody of the warden of the state prison, pursuant to a sentence which had several years to run, murdered the warden, and was had before the Superior Court by habeas corpus for trial for that offence, and upon conviction was sentenced to be executed, and was remanded to the custody of the warden of the prison, there to remain until the day named for his execution, it was holden that the remanding order, though

in form a part of the sentence, was not a punitive part of it, that the court were not bound to commit him to the custody of the sheriff of the county, that in contemplation of the law he had continued in the cusody of the warden, and that it was proper that he should so continue until wanted for execution, and be taken from his custody by an overriding death-warrant, and that the judgment was not erroneous.

The constitutional provision which requires that jurors shall be impartial is in affirmance of the common law, and the juror must be free from prejudice, ill-will, partiality, or bias, and whether he is so or not, must under our practice be ascertained by the court before he is sworn as a juror.

A fixed or settled opinion founded upon prejudice, partiality from relationship of kindred or business, ill-will, or other cause, whether expressed or unexpressed, is sufficient evidence of partiality to disqualify a juror. But an opinion, impression, or belief arising from reading an account of a transaction in the newspapers, as current news of the day, or hearing an account of it from one so informed, unless tinctured with prejudice or partiality derived from some other source, is not ordinarily such fixed and settled opinion, but hypothetical, received as true only till contradicted or explained, and does not disqualify the juror.

Where, on the trial of a prisoner for the murder of the warden of the prison, evidence was offered to show that the provisions with which he had been supplied were tainted and unwholesome, in justification of the killing, and it did not appear that the prisoner had made any complaint to any officer of the prison, or made any effort to remedy the evil, it was holden that the evidence was not admissible, in justification, nor to reduce the degree of the crime, for that it did not show that the killing was necessary, and did show that it was intentional, premeditated and without immediate provocation.

INDICTMENT for murder ; tried to the jury in the Superior Court for Hartford county, upon the plea of not guilty, before *Carpenter* and *Minor, Js.* The prisoner was charged with the murder of William Willard, warden of the state prison, within which the prisoner was at the time confined as a convict.

While the jury were being impaneled, Lonzo M. Smith, one of the persons regularly summoned, was first called and examined as to his qualifications as a juror in the cause ; and being inquired of by the counsel for the prisoner whether he had formed any opinion as to the prisoner's guilt, said that he read the account in the newspapers at the time of the killing of Capt. Willard by the prisoner ; that from these accounts, if true, he had formed an opinion as to the guilt of the prisoner ; that he told his family at the time, that, if the accounts were true, a horrid murder had been committed ;

that he supposed that the accounts in the newspapers were true, and that he had seen no contradiction of those statements; and that it might require some evidence to remove his opinion of the prisoner's guilt.

In reply to questions put by the attorney for the state and the court, the juror said that his impressions as to the prisoner's guilt related to the act of killing, and not to the nature and degree of the crime; that he had no bias or prejudice against the prisoner; that he had formed no settled opinion of his guilt; that he believed he could try the cause fairly, and render an impartial verdict upon the evidence given in court, uninfluenced by any previous opinion; that it would require no direct evidence to remove his opinion of the prisoner's guilt, but only a failure on the part of the state to show that the newspaper statements were true.

The counsel for the prisoner thereupon challenged the juror and objected to his being sworn in. From all the above statements of the juror, in connection with his appearance and manner of answering, the court were of the opinion and found that he had formed no settled opinion as to the prisoner's guilt, that he had no bias or ill-will against him, and that he was impartial and indifferent as between the state and the prisoner. The court therefore overruled the challenge and accepted the juror.

Afterwards, while the jury were being impanneled, Samuel J. Mills, one of the jurors regularly summoned in the cause, was called and examined, and being inquired of by the counsel for the prisoner as to his qualifications, said that he had both heard and read of these matters, and from what he had heard and read, believing them to be true, he had formed an opinion as to the guilt or innocence of the accused; that he had held such opinion since the occurrence, and had seen no occasion to change it; that he could not say he had expressed such opinion, but presumed he might have done so, but could not remember; and that it might require some evidence to change his opinion.

Being inquired of by the attorney for the state, the juror said that he attended the funeral of Capt. Willard, that he

State *v.* Wilson.

had no knowledge of the facts except from the papers and remarks, that he took it for granted that the prisoner killed the warden, and that he believed the act of killing was a crime. He also said that he thought and believed he could be impartial and try the case fairly.

Being inquired of by the court, the juror said that he had not formed a settled opinion, but it was an impression merely, and that it would yield to the evidence; that it could not be a settled opinion until confirmed by something further; that he believed he could try the case fairly upon the evidence given in court, but would not say positively that he could.

Being further inquired of by the counsel for the prisoner, he said that he had never sat as a juror in a case like this, and could not say how far his present opinions or impressions would affect him as a juror, but he believed he could hear and decide the case impartially.

The counsel for the prisoner thereupon challenged the juror, and objected to his being sworn in.

From all the statements of the juror, considered and weighed in connection with his appearance and manner of answering, the court were of the opinion and found that he had formed no settled, fixed opinion as to the prisoner's guilt; that the opinion or impression resting upon his mind was substantially the same as would be likely to be entertained by any intelligent man who had heard or read of the occurrence as a part of the current news of the day, and had seen no contradictory statement; that it had produced in his mind no bias or ill-will against the prisoner; that he had formed no opinion as to the degree of crime; and that he was impartial and indifferent as between the prisoner and the state. The court therefore overruled the challenge and accepted the juror.

During this examination of the jurors it was stated by the attorney for the state that the act of killing by the prisoner would not be a disputed point on the trial, inasmuch as the prisoner had published in the papers the day before a statement over his own signature, in which he admitted that he killed the deceased, and claimed that he was justified in so doing. To this statement of the attorney the counsel for the

accused replied that the prisoner, by his plea of " not guilty," put in issue every fact tending to show his guilt, and admitted nothing, but did not otherwise deny the statement of the attorney.

Upon the trial of the cause, and after the jury had been impanneled and sworn, and before the introduction of any evidence therein, the prisoner claimed the right, and was allowed by the court, to conduct his own defence; and thereupon he dismissed the counsel who had been assigned him by the court, and who had to that point acted in his defence; but at the suggestion and request of the court, and with the consent of the prisoner, his counsel remained by him to advise him as to matters of law, and questions of the admissibility of testimony, and to argue the same to the court, and they did so remain and act.

In the cross-examination of Dwight M. Martin, deputy warden of the state prison, one of the witnesses for the state, the prisoner asked him the following question: " Did I show you stinking meat about three weeks before the killing?" The attorney for the state objected to this inquiry, and claimed that the answer intended to be elicited thereby was inadmissible. The prisoner claimed as a reason for asking the question, that while confined in the state prison as a convict, for a long time previous to the time referred to in the inquiry, and at that time, and down to the time of the killing of the deceased, he had been fed on putrid and stinking meat, and other improper food, and that the inquiry tended to show these facts, and that it was to be followed by other questions of a similar character to the same witness and others, all for the purposes of sustaining this claim. No claim was made by the prisoner that his treatment was other and different from that received by the other prisoners, nor that the treatment affected his health, nor that it had any connection with the act of killing the deceased except as a motive for the act, nor did he state to the court any specific act of cruelty which he intended to prove, but he did claim that by reason of the alleged treatment, he " was compelled to kill Captain Willard in self-defence," and offered the evidence in justification of the act and for no other purpose.

State *v.* Wilson.

The counsel for the prisoner, by leave of the court, claimed in his behalf that the evidence which he offered was admissible, for the purpose of reducing the crime from murder in the first degree to murder in the second degree or manslaughter.

The court sustained the objection of the attorney for the state to the inquiry, and refused to receive the evidence for the purpose for which it was offered by the prisoner, but at the same time stated that it might or might not be admissible for the purpose claimed by his counsel, and that, when offered for that purpose by the prisoner, the court would then determine the question of its admissibility. The prisoner did not offer it for that purpose.

The jury returned a verdict of guilty of murder in the first degree.

The court accepted the verdict, and passed sentence " that the said James Wilson be taken hence, and be remanded to the custody of the warden of the Connecticut state prison, and that, on Monday, the 9th day of October, A. D. 1871, the said James Wilson be taken into the custody of the sheriff of Hartford county, and be by him transferred to the common jail for said county, and be there kept in close confinement until Friday, the 13th day of October, A. D. 1871, on which day, between the hours of ten o'clock in the morning and two o'clock in the afternoon, within said jail, or within an inclosed yard thereof, he, the said James Wilson, be hanged by the neck until he be dead."

The prisoner moved for a new trial for error in the rulings of the court. He also filed a motion in error, assigning as error " that the court erred in rendering judgment and passing sentence that the said James Wilson should be remanded to the custody of the warden of the state prison, for a portion of the time which would elapse after the passing of said sentence and the day fixed by said court for his execution, and that for the remaining portion of said time he should be taken into the custody of the sheriff of Hartford county, and be by him confined in the common jail for said Hartford county."

*Hyde* and *Calhoun*, in support of the motions.

1. The sentence is the judgment of the court and a part of the record. 1 Bishop Crim. Proc., § 946 ; 1 Arch. Cr. Pr., 180 ; *Webster* v. *The Commonwealth,* 5 Cush., 386. Imprisonment is a part of the sentence. 1 Arch. Cr. Pr., 182. The court erred in sentencing Wilson to confinement in the state prison. The state prison is a place for punishment, and not for the confinement of prisoners in the custody of the court or its officers. The warden is not an officer of the court, nor subject to its orders. Murder in the first degree is not a state prison offence. The sentence pronounced was to be executed by the sheriff of the county, the executive officer of the court, and the prisoner should have been retained in his custody. If it be claimed that Wilson was remanded to the custody of the warden, to be held by him under a previous unexpired sentence, we reply that no evidence of it appears on the record. But admitting that he was under such sentence, it must also be admitted (for the fact is so) that his sentence to confinement in the state prison will not expire till long after the day fixed for his execution. The ordinary rule is that, when a convict is already under sentence, the new sentence shall take effect when the former sentence expires. *Kite* v. *Commonwealth,* 11 Met., 581 ; *State* v. *Smith,* 5 Day, 175 ; 1 Bish. Cr. Proc., § 878 ; 1 Bish. Cr. Law, § 636. If the rule is different where the new conviction is for a capital offence, it must be on the ground that such conviction supersedes all prior sentences; and the prisoner cannot be remanded for punishment for a lesser and prior offence. In this case it would be equally fatal to hold that the prior sentence is not superseded until the time of execution ; for the court in the sentence pronounced does not leave the old sentence in force till the day of execution. It cannot be that it is left to the discretion of the court pronouncing sentence in a capital case, whether the prisoner shall be further punished under a prior sentence, or if punished, for how long or to what extent. The sentence must be the sentence of the law, not of the discretion of the court, except so far as the power is specially conferred on the court. 1 Arch. Cr. Prac., 180 ; 1 Bish. Cr. Proc., § 876.

2. The court erred in accepting the jurors and overruling the challenges by the accused. "In all criminal prosecutions the accused shall have a right to be heard by himself and by counsel; and in all prosecutions by indictment or information, a speedy public trial by an *impartial* jury." Const. of Conn.; Dec. of Rights, Sec. 9. "The jurors, to be impartial, should be men whose minds are open to impressions which the facts and law in the case ought to make, so that there shall be no combat with preconceived opinions in regard to the case." *Potter* v. *The State*, 18 Conn., 171; 2 Graham & Wat. on New Trials, 379; 1 Bishop on Crim. Proc., § 772. It is not enough that a juror is free from personal *ill-will* against one of the parties. His *judgment* must be impartial. 2 Graham & Wat. on New Trials, 397; 1 Bishop on Crim. Proc., § 770; *People* v. *Vermilyea*, 7 Cow., 108, 122, 128. If a juror has formed or expressed an opinion on the case, or an essential part of the case, such as would require evidence to remove, he is disqualified. *Potter* v. *The State*, 18 Conn., 172; 1 Burr's Trial, 367; *People* v. *Rathbun*, 21 Wend., 509, 542; *Armstead* v. *Commonwealth*, 11 Leigh, 657; *Walsh's Case*, 2 Wall. Jr., 143; *Trimble* v. *The State*, 2 Iowa, 404, 414; *Gray* v. *The People*, 26 Ill., 344, 346; *Smith* v. *Eames*, 3 Scam., 76, 78, 80; *Cancemi* v. *The People*, 16 N. York, 501; *Commonwealth* v. *Knapp*, 9 Pick., 496; *Tweedy* v. *Brush*, Kirby, 13; *Smith* v. *Ward*, 2 Root, 302. Nor does it matter from what source the opinion is derived. *People* v. *Mather*, 4 Wend., 229; *Blake* v. *Millspaugh*, 1 Johns., 316; *Commonwealth* v. *Webster*, 5 Cush., 295; *Reynolds* v. *The State*, 1 Kelly (Geo.), 222; *Boon* v. *The State*, id., 631; *Moses* v. *The State*, 10 Humph., 456; *Waukonchawneekhaw* v. *U. States*, 1 Morris (Iowa), 332; 2 Graham & Wat. on New Trials, 440, 445; 1 Bishop on Crim. Proc., § 772; *Gray* v. *The People*, 26 Ill., 344; *Smith* v. *Eames*, 3 Scam., 76. Nor whether the opinion is positive or hypothetical, if it produces a bias. *Freeman* v. *The People*, 4 Denio, 9; *McGowan* v. *The State*, 9 Yerg., 184, 193. An opinion as to the facts in a case is not a *hypothetical* opinion. 2 Graham & Wat. on New Trials, 437; *Potter* v. *The State*, 18 Conn., 174. Any attempted distinc-

tion between opinions and impressions will prove utterly impracticable. 2 Graham & Wat. on New Trials, 452. Tested by the foregoing rules applied to the facts shown by the record, the juror Smith was not impartial. And the juror Mills was still more biased. The opinion of the latter had been derived from various sources. It had been entertained from the first. It had been expressed. It involved both the law and the facts, and thus went to the whole case. It was such as required evidence to remove. He attended the funeral of the deceased, and heard remarks there, doubtless exciting and calculated to prejudice his feelings against the prisoner. He could not even assure the accused that he would try the case fairly on the evidence. The court, however, accepted the juror, and this decision is a subject of review here. *Potter* v. *The State*, 18 Conn., 171. And only upon the facts set forth on the record. The appearance of the juror and his manner of answering are not proper subjects of consideration. If there is any doubt as to the impartiality of a juror, the party complaining is entitled to the benefit of it; especially in a capital case. 2 Graham & Wat. on New Trials, 463; *Holt* v. *The People*, 13 Mich., 224. A juror's statements as to his impartiality are of little value. He may perhaps be able to decide whether he entertains *ill-will*. He *cannot* know whether his preconceived opinions will effect his *judgment*. A juror should not be asked if he can try the case impartially. *Baker* v. *Harris*, 1 Winst. (N. Car.), 277.

3.  The court erred in excluding the evidence offered by the accused, as to his treatment by the deceased before and down to the time of the killing. 1. It is far from clear that the evidence if received might not have justified the killing. The accused *claimed* that by reason of said alleged treatment, he " was compelled to kill Capt. Willard in self-defence." This court must find that the evidence would not even have tended to show a justification. 2. The evidence was clearly admissible for the purpose of mitigation. It was thus offered by the counsel of the accused, and was rejected by the court on the ground that it was not thus offered by the prisoner personally. The circumstances of the case plainly indicate

that the accused was misled as to the ruling of the court; that he supposed the evidence was wholly excluded, and that through an honest mistake as to the decision he missed the opportunity to make his defence; and if so a new trial should be allowed. 1 Graham & Wat. on New Trials, 161, 168, 179; *LeFleming* v. *Simpson*, 1 Man. & Ryl., 269; *Dunham* v. *Baxter*, 4 Mass., 79; *Cutler* v. *Rice*, 14 Pick., 494; *Trulock* v. *The State*, 1 Clarke (Iowa), 515; *Jones* v. *Fennimore*, 1 Iowa, 134, 145.

*Hamersley*, State Attorney, contra.

BUTLER, C. J. We listened to the able and earnest arguments of the counsel for the prisoner with the attention they deserved, and have given them the deliberate consideration which the character of the case and our sense of duty required, but without being satisfied that there is any error in the record, or any sufficient ground for a new trial.

1. In relation to the supposed error in the judgment, there is a fallacy in their argument which lies in the assumption that the order remanding the prisoner to the custody of the warden, which is contained in it, is a punitive part of the sentence. Such, we all know, was not the intention of the court, and such is not the legal effect of it. That part is directory merely.

The record is not full, and does not show the process by which the prisoner was brought before the court. It appears in the indictment as a fact found by the grand jury, that he was confined in the state prison for crime, and it must be presumed that he was in the custody of the warden, by the command of a warrant, to be holden until the expiration of his sentence or until discharged by law. It does not appear in the record but is admitted in the argument that the time for which he was sentenced to that prison had not expired and would not expire before the 9th day of October, 1871, and it must be taken to be true that it would not. Neither the homicide, nor the indictment found, could affect that sentence, or the legal duty of the warden. Nor did the Superior Court do anything to

affect either. They sent for the prisoner and tried and sentenced him. In order to do that, did they take him from the custody of the warden, or did the warden take him before the court for trial pursuant to a writ of habeas corpus, retaining his custody until he was formally remanded? This does not appear expressly, but it was the proper course, and the court must be presumed to have acted rightly and to have pursued it, and that they did do so has been stated in the argument and not denied.

When an officer produces the body of a prisoner before the court, pursuant to the command of a writ of habeas corpus *cum causâ*, both are subject to the order of the court, but the custody of the prisoner is unaffected until determined by an order of the court. If the court decides the custody to be lawful, there is usually, in form, an order·of remand, but it is a form of dismissing the case merely, for the officer in contemplation of law has not been deprived of that custody. So in this case, the warden was presumptively before the court in obedience to a writ stating the purpose, and had the prisoner there in his keeping, though both were subject to the order of the court. Such was the precise command of the writ if in the usual form. The remand then was formal in its nature and directory. Whether the court could have ordered him out of the custody of the warden, and into that of the sheriff, to be kept by the latter until the execution, except by its overriding death warrant, is a question we need not consider. Clear it is the court were not bound to do it, and it was the most proper course, to say the least, that they should not, but leave him where they found him until he was wanted for execution, and then take him by force of the final warrant, which, from the necessity of the case, must override that under which the warden held him in the prison.

When a prisoner has been convicted of murder he must be kept in custody, and the sentence or judgment usually contains an order for such keeping. Such an order must be made and appear of record somewhere, and may well be contained in the record of the judgment. Where a prisoner has been bound over or. committed to jail before trial, the sentence

usually directs, according to the form in Swift's Digest, that he " be taken to the place whence he came." Before the statute was passed prescribing the place of execution, it was further directed " that he should be taken thence," on the day named, " to some convenient place of execution." 2 Swift's Digest, 443. That part of the form of the sentence was clearly directory, and not a part of the punishment.

The same we are satisfied is true in respect to this sentence, and the provision it contains for the custody until execution. The proper course was pursued by the court below, and there is no error in the record.

2. All the questions raised in respect to the jurors are determinable by principles recognized in our own decisions. The constitution provides for an impartial jury, and the provision is in affirmance of the common law. All therefore are agreed that jurors must be impartial, and the fact that they are must be ascertained before they can be legally sworn. The fact is ascertained at common law, and in some of our sister states, by inquiry and the decision of triers; in other states, and here, by the court. It would seem to be an easy and simple matter to determine the question by a *voire dire* examination if the juror is honest; and it should be so. Where there is partiality inferrible from the relations of kindred or business, or where there is personal prejudice or ill-will, or an existing controversy, the question of indifference is easily determined. And where the objection to a juror is grounded on an opinion affected by relationship, or fixed and settled by prejudice or ill-will, or influenced by a controversy, or induced by a distorted or perverted statement of fact from one who entertains prejudice or ill-will, or is the repeated statement of the facts, or of an opinion which originated from any such prejudiced source, the rules which have been read to us from the cases cited are more or less applicable. But the efforts of astute criminal lawyers to magnify opinions and impressions, which a word of denial or explanation would brush away, and which would have no effect upon the mind of a man when he had assumed the duties and obligations of a juror and sworn to make a true deliverance according to the

evidence given in court, into fixed or settled opinions which it would require material evidence to remove, and which would therefore weigh in the scale of judgment against the prisoner; and the difficulties which must necessarily attend every effort to ascertain with precision the character of an opinion formed in, or an impression made upon, the mind of any man and determine correctly whether it be a fixed or settled opinion, have filled the books with definitions and rules which are not always reliable, and cases which are more or less conflicting. A considerable selection of these has been read to us ; but we do not care to analyze them, or to discriminate in reference to them. Very few of them are applicable to a case like the present.

The opinions, impressions, suppositions, beliefs, or whatever one may choose to call them, entertained by the jurors objected to, differed from those to which we have alluded. They had their origin in no relationship, partiality or prejudice, but from reading an ordinary statement of the circumstances attending the killing, for aught that appears impartially obtained, and candidly stated in the newspaper, and those opinions, impressions, or suppositions received no tincture of prejudice from any other source. For various reasons we are satisfied that such opinions should not in theory, and do not in fact, incapacitate a man from sitting as an impartial juror.

In the first place, nineteen-twentieths of the intelligent men of the county where a homicide has taken place, and the fact with the circumstances attending it have been published in the newspapers, would be incapacitated from sitting as jurors, if the objections raised in this case were well-founded. All of them would read the account, or hear the facts detailed by some one who had read them. Most of them would form just such opinions, or get just such impressions, as the jurors had in this case. And if we were to adopt the principles and sustain the objections which have been urged upon us, we should open our courts to just such judicial farces as the one which has recently been acted in the case of Foster in the city of New York. That state of things we must avoid ; and we are satisfied that the jurors selected under our system can

be relied upon to try cases impartially and upon the evidence given in court, notwithstanding they may have heard or read accounts of the transaction, and formed an opinion, if such it. may properly be called, therefrom.

Opinions thus formed are not in their nature such as should disqualify a juror. If he is free from partiality or prejudice derived from any other source, his opinion is, as a matter of course, hypothetical, not fixed or settled in the sense in which those terms are used, when used correctly, in the law. All men take newspaper statements as current news, liable to qualification, explanation or contradiction, and when qualified, explained or contradicted, they change their opinions or belief accordingly, as matter of course. It requires no stronger evidence to satisfy the mind of a juror having such an opinion, impression, supposition or belief, one way or the other, as the evidence may preponderate, than it would if he had never read the statement. His mind is certainly in no worse situation than the mind of a juror who has heard one side in court making a *primâ faciê* case, is to hear the defence when made upon the other side, and give it its just weight.

These views are not new in this court. They are contained, in substance, in the opinion of Judge WILLIAMS in *The State* v. *Potter*, 18 Conn., 166. In that case the prisoner had made a confession which was published in the newspapers with other accounts of the transaction, and read by the juror, who was of opinion that, if the accounts were true, a horrid murder had been committed, but he had formed no opinion of the truth or falsity of the reports, and remarked upon reading them, that the case would probably turn out a different affair upon the trial. He answered, on inquiry, that he had no settled opinion, and could render an impartial verdict. He was received as a juror, and his reception sustained by this court. Judge WILLIAMS, in his opinion, cited from Hawkins, and adopted the principle that the expression of opinion formed even from a personal knowledge of the case, and not out of any ill-will to the party, is no cause of challenge, and adds that the opinion expressed must be such as to indicate hostility, or a want of indifference in the juror. He further says

that " where a juror has a settled opinion in a case and has declared it, he ought not to sit, but while it is a mere impression arising from facts supposed to exist, of the truth of which he has formed no opinion, or where the opinion is upon a point so free from doubt as to lay no foundation for dispute, there can be no ground to infer hostility or prejudice, and so the juror must be considered indifferent. To exclude persons on such grounds would be to adopt a rule not known to the common law, and in cases of great notoriety would be to say that there shall be no trial at all by jury, or that the trial shall be by persons the least fitted by their situation and intelligence to do justice to the cause they are called to determine."

The pith and marrow of these extracts is that the opinion must be formed in such a way, or be of such a character, that hostility or prejudice toward the prisoner may be inferred from its existence or expression. But hostility or prejudice cannot, as a rule, be inferred from an opinion formed and expressed simply from reading, or hearing stated, as current news of the day, the fact of a homicide and the circumstances attending it. There should be found some other circumstances of relationship, partiality, prejudice, hostility or ill-will, acting at the same time upon the mind and giving it a bias, or the juror should be accepted. The court in its determination should be guided rather by the existence or the absence of such other circumstances, which might have affected the reports read or heard, or may be operating directly upon the mind of the juror, and assisting the reports to create a bias or prejudice which renders him not indifferent.

Applying these rules to the jurors in question, we are of opinion that the court was right in its finding that the jurors were indifferent. The juror Smith formed his opinion simply from the newspaper accounts which he read at the time, upon the supposition that they were true, and in expressing that opinion, he qualified it by saying that, if they were true, a horrid murder had been committed; but he said that he had no bias or prejudice against the prisoner, and formed no settled opinion of the nature or degree of the crime, and believed he

State *v.* Wilson.

could try the cause fairly, and render an impartial verdict. I think it is not too much to say, that if that man had not been holden qualified as a juror in the case, it would have been impossible to obtain a jury of sufficient integrity and intelligence in Hartford county, from those who had read or heard anything of the transaction.

The difference in the case of Mills, consisted in the fact that he said at the outset of his examination that he believed what he had heard and read of the matter, and so formed his opinion of the guilt or innocence of the accused, and then held it because he had seen no occasion to change it. But upon further inquiry he said he had no knowledge of the facts except from the newspapers and remarks, and took it for granted that the prisoner killed the warden, and believed that the act of killing was a crime. He further said that his opinion was not a settled opinion, but an impression merely, that it would yield to evidence, that it could not be a settled opinion until confirmed by something further. And he said three times in answer to the question by prisoner, attorney, and court, that he believed he could try the case fairly and impartially on the evidence, but would not say positively that he could.

Here were three of the principal elements which the court recognized in *The State* v. *Potter*, and which fully justified the finding of the juror indifferent by the court below.

The first was that the opinion of the juror was derived from newspaper accounts, or statements which he had heard as current news, and nothing appeared to show that they were from a prejudiced source, or that his mind was in any other way prejudiced or biased toward the prisoner. He attended the funeral of Capt. Willard, but it does not appear that that fact created any prejudice or bias in his mind, and it cannot be presumed that it did.

The second is that he had no settled opinion, but an impression merely, which could not be a settled opinion until confirmed by something further.

The third is that he believed that he could try the case fairly and impartially upon the evidence given in court, but would not say positively that he could. No honest man, under

similar circumstances and with like impressions, or with any impressions derived from facts received as current news, would undertake to say more than this juror said. He could not have *knowledge* of what his conduct would be, so as to speak positively ; he could have an honest and conscientious *belief*, and that was sufficient to show that he was as indifferent as any man could be who had any *knowledge* of the case from any source.

It is impossible to read the examination of that juror and infer that he had hostility or prejudice toward the prisoner, and this court, as constituted when the case of *The State* v. *Potter* was tried, would undoubtedly have holden that such a juror was indifferent; and guided by the principles they recognized, and the light which discussion has since thrown upon the subject, we approve the decision of the court below in that matter, without the slightest hesitation.

3. But few words are necessary to express our reasons for approving the action of the court in excluding the evidence offered in justification by the prisoner. If all that the prisoner claimed to be able to prove had been proven, or admitted to be true, the court would have been bound to instruct the jury that it furnished no justification for the killing. Other means of safety and redress, by complaint to the proper authority if his life was in danger, were open to the prisoner, but he made no attempt to avail himself of them, and no man can justify the killing of another in self-defence until he has exhausted all other means of safety. The suggestion of counsel that the evidence might be admissible to mitigate the offence, was without force ; for the undoubted effect of the evidence was to show that the killing was intentional, deliberate and premeditated, and not occasioned by any sudden provocation.

A new trial is not advised.

In this opinion the other judges concurred.