## HILL v. STATE.

[72 South. 1003.]

CRIMINAL LAW. *Appeal. Error. Examination of juror. Race prejudice.*
Where on a trial of a negro.for murder, a juror was asked on his
*voir dire*, whether he had any prejudice against the negro as
a negro that would induce him to return a verdict on less or
slighter evidence than he would return a verdict of guilty
against a white man under the same circumstances, it was re-
versible error not to allow the juror to answer.

APPEAL from the circuit court of Bolivar county.
HON. WM. A. ALCORN, Jr., Judge.

Joe Hill was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*Duncan H. Chamberlain,* for appellant.

The right to a fair and unprejudiced jury is at the
very foundation of the right of trial by jury. If there
are any doubts as to the qualification of a venireman,
they should be solved against the one challenged. A
party submitting his case to the arbitrament of a jury,
is entitled to a jury, every member of which is a quali-
fied juror—above all doubt or question. *Theobald*
v. *Transit Co.,* 191 Mo. 395, 428, 90 S. W. 354, 362,
quoting approvingly the rule announced by Mr. Chief
Justice MARSHALL of the supreme court of the United
States in Burr's Case, that light impressions which
may be fairly supposed to yield to the testimony offered,
which may leave the mind open to a fair consideration
of that testimony, constitute no sufficient objection to
a juror, but that those strong and deep impressions
which will close the mind against the testimony that
may be offered in opposition to them, which will combat
that testimony and resist its force, do constitute a
sufficient objection to him, and referring to many cases
holding that an unbiased jury is of the right of all
litigants, our supreme court has said: ''The streams of

justice should be kept pure and free from prejudice.
In the administration of justice the courts and all
judges, as well as the jurors, should, as far as human
precaution can avail, be kept free from bias or prej-
udice. . . . A man may have an impression ,one
way or the other, even an opinion, that can be reached
and dealt with and possibly removed so that he will be
a fair, competent juror. Not so with prejudice. It
is too strong in its hold to be easily thrown off. Its
baneful presence, working on us secretly and insidiously,
may, unconsciously to our own selves, mold our minds.''
*Carroll* v. *United Rys. Co. of St. Louis,* 137 S. W. 303,
excerpts taken from pages 307-308.

In *Pinder* v. *State,* 8 So. 837, the supreme court of
Florida concludes its opinion in the following words:
''Upon the ground that the court below erred in not
permitting the examination of the jurors upon the *voir
dire* on the line herein pointed out, we think the judg-
ment and sentence of the court below should be reversed
and a new trial granted, and it is so ordered.'' Citing
*State* v. *Madoil,* 12 Fla. 151; *Pierce* v. *State,* 13 N. H.
536; *People* v. *Reyes,* 5 Cal. 347; *People* v. *Car Soy,* 57
Cal. 102; *People* v. *Christie,* 2 Park. Crim. R. 579;
*Jones* v. *State,* 2 Blackf. 475; *Lester* v. *State,* 2 Tex.
App. 432; *Milan* v. *State,* 24 Ark. 346.

To show to what lengths some of our southern courts
have gone in their zeal to safeguard negroes against the
danger of prejudiced jurors, we need only cite the case
of *Frederick* v. *State,* wherein the court of criminal
appeals of Texas (pronounced by the supreme court of
Oklahoma to be the best criminal tribunal in the world),
delivered itself as follows:  ''The bill of exceptions
with reference to the questions propounded to the
jurors was as follows: 'On the trial of the case when
several members of the special venire were being ex-
amined on their *voir dire,* counsel for defendant asked
several venireman whether or not, under the same facts
and circumstances, he could and would render the same

verdict in a case where a negro had killed a white man as in a case where a white man had killed a negro, the evidence being the same; and, when said venireman answered in the affirmative, defendant's counsel asked the question as follows: Under the same facts and circumstances, could and would you render the same verdict in a case where a negro killed a white man for insulting his (the negro's) wife as in a case where a white man killed a negro for insulting his (the white man's) wife? Which was objected to by the counsel for the state, and said objection was by the court sustained, to which action the appellant excepted. If the court had refused to permit the first question, appellant's contention would come directly under the rule laid down in *Lester* v. *State*, 2 Tex. App. 432. However, an answer to the question whether or not they would, under the same facts and circumstances render the same verdict in the case where a negro had killed a white man as where a white man had killed a negro was permitted by the court. But, when appellant desired to further probe the consciences of the jurors by asking them a question presenting the matter of prejudice upon the very issue involved in the case, the court refused to permit the question to be answered. The right to ask a question of this character at all is based upon the idea of a certain race prejudice which, from common experience, is recognized to exist to a greater or less extent, on the part of southern people of the Anglo-Saxon race against the negro; and it follows, if an interrogatory of this character is permissible, the question should go to the full extent, and not merely half way. . . . If the answer had not shown prejudice on the part of said jurors, or any of them, still it may have furnished appellant some basis upon which he might have exercised his right more intelligently to avail himself of his peremptory challenges.''

*Frederick* v. *State*, 45 S. W. 489— excerpts from pages 590, 591, in this connection, see note on ''Hypo-

thetical Question in Examining Juror on *Voir Dire,"* and authorities collated thereunder at page 680, vol. 1913D, Annotated Cases. Also 15 Ann. Cas. 584; 88 Miss. 800; *Basye* v. *State,* 63 N. W. 811.

The doctrine is sustained by *Railroad Co.* v. *Buttolf,* 66 Ill. 347; *Watson* v. *Whitney,* 23 Cal. 375; *State* v. *Godfrey,* Brayt. 170; *People* v. *Car Soy,* 57 Cal. 102; *State* v. *Bresland* (Minn.), 61 N. W. 450.

*Ross A. Collins,* Attorney-General, for the state.

The appellant, in his first three assignments of error, released a broadside of criticism and authorities against the action of the court in refusing to permit a certain line of interrogatories to the jury on their *voire dire* examination. Appellant's counsel sought to . ask the prospective jurors certain questions purporting to ascertain if they had any prejudice against the negro as a negro. It is to be noted that the record shows that the appellant in this case is a negro as was, also, the man killed by him. Each and every witness, save one, who testified only on the matter of venue were all of the negro race. The trial judge had, in the exercise of the duty and authority conferred on him, interrogated the jury under oath as to whether or not they could form a fair and impartial verdict in the case, and as to whether or not they had any bias, prejudice, or ill-will towards the defendant that would prevent them from doing so. This court has heretofore approved a refusal of a lower court to give an instruction whereby the jury were told that they should try a negro by the same standard applicable to a white man. It is an elementary fact, recognized by even the most untutored mind, that an oath to try the case fairly and impartially, without bias, prejudice or ill-will toward the defendant, naturally and necessarily implies that they will try him as a man accused of crime and not in some peculiar manner because he is a negro. The giving of an instruction, or

the asking of such questions relative to this kind of prejudice, constitutes an imputation on the integrity of the jurors and should not be allowed. I grant that where the accused is of a different race from that of the deceased it may, under some circumstances, be proper to permit such questions, and the courts have held that on the trial of a white man for the murder of a negro, that it was not improper to ask the veniremen whether they could, upon the same evidence, return the same verdict against a white man for killing a negro as for killing another white man. *Lester* v. *State,* 2 Tex. App. 232; *State* v. *McAfee,* 64 N. C. 339. It has also been held proper to ask a jury upon the trial of a Chinaman if: "Other things being equal, would you take the word of a Chinaman as soon as you would that of a white man?" *People* v. *Gar Soy,* 57 Cal. 102. But it is well settled that the court may exercise its sound legal discretion in respect of the pertinency of the questions put and the limits to which the examination shall be extended. Thompson on Trials (2 Ed.), Par. 101.

I earnestly submit that the questions so strongly complained of were properly excluded from the jury as there was nothing in the case to suggest that race prejudice had or could be, engendered into the minds of the jury and a suggestion of such prejudice by the given questions would have been improper.

The appellant cites a long array of authorities on the abstract principle relating to the right of the accused to a fair and impartial jury, and the principle contended for by me is, in no wise, controverted by any of the authorities cited by him. The appellant cannot say that he was embarrassed in his defense, or that by reason of the court's refusing to permit these questions he obtained other than a fair and impartial trial and in the absence of any showing in this respect, this court will not take cognizance of such complaint.

POTTER, J., delivered the opinion of the court.

Joe Hill, the appellant in this case, was convicted of murder in the circuit court of Bolivar county, and sentenced to death, and prosecutes his appeal to this court.

On the *voir dire* examination of a venireman, Will Dillard, counsel for appellant propounded to said proposed juror the following question:

"Mr. Dillard, have you got any prejudice against the negro, as a negro, that would induce you to return a verdict on less or slighter evidence than you would return a verdict of guilty against a white man under the same circumstances?"

Question of similar import were propounded to two other proposed jurors during the progress of the *voir dire* examination, and upon objection by counsel for the state the court ruled that the questions propounded were not competent. We think the trial judge erred in refusing to allow the jury to be examined with reference to race prejudice. The defendant on trial was a negro, and was being tried by white men. If for no other purpose than to exercise intelligently his right to peremptorily challenge jurors, the defendant had a right to inquire with reference to any bias or prejudice on account of race that might exist in the mind of any juror tendered to him. Under the circumstance in this case it was fatal error to deny the defendant this right.

As suggested by able counsel in his excellent brief, how else could appellant have guarded against race prejudice figuring in the determination of his trial than by subjecting the jurors on their *voir dire* examination to a line of questioning such as was presented to the court in this instance? It is only by asking questions of the nature of the above question that it is possible for counsel to elicit from a venireman whether or not there exists in his breast race prejudice, perhaps calculated to do the defendant irreparable injury in the trial of his case. In the case of *Pinder* v. *State,* 27

Fla. 370, 8 So. 837, 26 Am. St. Rep. 75, the supreme court of Florida says:

"It appears from the record that when the jury was being impaneled who tried the accused, and when the jurors were being tested upon the *voir dire* as to their competency, etc., the prisoner's counsel propounded to J. F. Geiger and to other jurors the following question: 'Could you give the defendant, who is a negro, as fair and impartial a trial as you could a white man, and give him the same advantage and protection as you would a white man upon the same evidence?' which question the court below refused to allow to be propounded to the jurors upon their *voir dire,* and refused to allow counsel in the cause to propound any questions to the jurors upon the *voir dire;* the court itself insisting upon propounding all questions to the jurors touching their competency, and propounding only such questions to them as are in express terms provided for in section 10, p. 446, McClel. Dig. The refusal of the court below to allow the question quoted above to be propounded to the jurors upon the *voir dire* is assigned as error, and will be considered first. We think the court erred in refusing to permit this question to be propounded to the jurors. Though the question is not in express terms provided for in the statute above cited, yet it was a pertinent, and, as we think, proper, question to test fully the existence of bias or prejudice in the minds of the jurors. It sought to elicit a fact that was of the most vital import, to the defendant, and a fact, too, that if existent, was locked up entirely within the breasts of the jurors to whom the question was propounded, a knowledge of the existence of which could only be acquired by interrogating the juror himself" citing *State* v. *Madoil,* 12 Fla. 151; *Pierce* v. *State,* 13 N. H. 536; *People* v. *Reyes,* 5 Cal. 347; *People* v. *Car Soy,* 57 Cal. 102; *People* v. *Christie,* 2 Parker Cr. R. (N. Y.) 579; *Jones* v. *State,* 2 Blackf. (Ind.) 475; *Lester* v. *State,* 2 Tex. App. 432; *Milan* v. *State,* 24 Ark. 346.

*Reversed and remanded.*